**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARY RICHARDS<br>630 Emerson Street, NW<br>Washington, DC 20011 | * | Civil Action No.: |
| Plaintiff | * | |
| v. | * | |
| OPTION ONE MORTGAGE CORPORATION<br>3 Ada<br>Irvine, CA 92618 | * | |
| and | * | |
| ALVIN E. GROSS, JR<br>6905 Whittier Boulevard<br>Bethesda, MD 20817 | * | |
| Defendants | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Option One Mortgage

Corporation ("Option One"), with the consent of Alvin E. Gross, Jr., notices removal of this civil

action from the Superior Court of the District of Columbia to the United States District Court for

the District of Columbia. This Court has original jurisdiction over this matter, jurisdiction based

on diversity of citizenship and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

In further support of this Notice of Removal, Option One states as follows:

### I. Plaintiff's Complaint

1. Plaintiff Mary Richards resides in the District of Columbia. (Compl., at ¶ 3).

2. Defendant Option One is a corporation organized under the laws of the State of

California and maintains its principal place of business in Irvine, California. (Compl., at ¶ 4).

3. Defendant Alvin E. Gross, Jr. resides in the State of Maryland. (Compl. Caption).

4. Plaintiff's home, the Emerson Street Property, was appraised at $375,000. (Compl., at Ex. 4).

5. Plaintiff maintains that

> [t]his action for declaratory judgment, injunctive relief and damages is brought to remedy on-going instances of egregious misconduct and violations of Plaintiff's rights under <u>federal</u> and local consumer protection and related laws by Option One, Gross and all persons or entities acting in concert with Option One in: (a) presenting and persuading Richards to refinance her property with an exotic, highly risky mortgage product with monthly payment obligations that far exceed Richard's ability to repay the debt; (b) demanding the alleged pre-payment of monthly mortgage payments in the amount of $30,000 in connection with the mortgage on that certain residential real property situated at 630 Emerson Street, NW, Washington, DC 20011 (the "Emerson Street Property"); (c) failing to account for any of the $30,000 in mortgage prepayments while at the same time initiating a foreclosure action related to the Emerson Street Property; (d) refusing to accept a refinancing of the mortgage obligation via Countrywide Home Loans to satisfy the entire balance of the mortgage while at the same time pursuing a foreclosure action related to the Emerson Street Property; (e) making false or materially misleading reports concerning the status of Plaintiffs mortgage account to credit reporting authorities; and (f) failing to provide the required notices and perform the other required procedures to consummate a foreclosure under District of Columbia law.

(Compl., at ¶ 4) (emphasis supplied).

6. In Count I (Declaratory Judgment to Set Aside Deeds and to Quiet Title Versus All Defendants) of her Complaint, Plaintiff asserts that "[t]here is a legal dispute concerning whether Option One loan administration and Defendant's collection activities are applicable under applicable <u>federal</u> and District of Columbia law, . . . ." (Compl., at ¶ 55) (emphasis supplied).

7. In Count II (D.C. Right to Cure Mortgage Foreclosure Default Act – All Defendants) of her Complaint, Plaintiff alleges that "Defendants violated the D.C. Right to Cure Residential

2

Mortgage Foreclosure Default Act by violating the FDCPA. Defendants violated the Truth in Lending Act, (15 U.S.C. §§ 1601 *et seq.)* and the implementing regulations commonly known as "Regulation Z," at 12 C.F.R. Part *226, et seq.* (collectively, "TILA") by using false, abusive, ruse, sham or oppressive tactics to pursue the collection of monies allegedly due and owing under a residential real estate mortgage or to accomplish a foreclosure sale of residential real property without the required notice." (Compl., at ¶ 58) (emphasis supplied).

8.  In Count IV (Fraud versus all Defendants) of her Complaint, Plaintiff avers as follows: "These unlawful acts and omissions includes, but is not limited to Defendants issuing false or materially misleading TILA notices to Plaintiff, that contains false or materially misleading information all for purposes of carrying out a foreclosure sale of the Emerson Street Property. (Compl., at ¶ 71) (emphasis supplied).

9.  In Count VII (DCCPPA Violations versus all Defendants) of her Complaint, alleges that "[i]ntentional violations of the FDCPA and D.C. Right to Cure Residential Mortgage Foreclosure Default Act, like the instances of misfeasance alleged against Defendants in this action, also constitute violations of the DCCPA." (Compl., at ¶ 92) (emphasis supplied).

10. In Plaintiff's Count I Prayer for Relief, she requests as follows:

> WHEREFORE, on Count I of her Verified First Amended Complaint, plaintiff Mary Richards respectfully prays for this Court to declare that: (a) the subject mortgage loan between Option One and Plaintiff was a predatory mortgage loan; (b) the was no valid foreclosure of the Emerson Street Property at anytime during 2007; (c) any deeds or deeds of trust issued by, to or on behalf of Defendant Option One, Defendant Gross or any unknown person entity acting in concert with them related to the Emerson Street Property is void *ab initio;* (d) any security interest claimed or otherwise asserted by Option One at anytime before the improper foreclosure of the Emerson Street Property is deemed invalid; and (e) Option One, and all those acting in concert with them are permanently

enjoined from taking any further adverse collection actions against Richards; and (g) Richards is entitled to reasonable attorney's fees and costs given the extreme nature of the circumstances here, together with such further relief favoring Richards as this Court deems just and proper under the circumstances.

(Compl.. at Count I Prayer for Relief).

11. In Plaintiff's Count II Prayer for Relief, she requests as follows:

WHEREFORE, on Count II of her Verified Complaint, plaintiff Mary Richards respectfully prays for a judgment in her favor and against Option One in an amount to be proven at trial, but reasonably believed to exceed $50,000 in the aggregate, statutory damages under the D.C. Right to Cure Residential Mortgage Foreclosure Default Act, together with interest, reasonable attorney's fees and costs, and such further relief favoring Richards as this Court deems just and proper.

(Compl., at Count II Prayer for Relief)

12. In Plaintiff's Count III Prayer for Relief, she requests as follows:

WHEREFORE, on Count III of her Verified Complaint, plaintiff Mary Richards respectfully prays for a judgment in her favor and against Option One in an amount to be proven at trial but reasonably believed to exceed $50,000 in the aggregate, or alternatively, rescission of the parties' agreement, or reformation of the parties' agreement consistent with actual performance and the circumstances surrounding the transaction, together with interest, reasonable attorney's fees and costs, and such further relief favoring Richards as this Court deems just and proper.

(Compl., at Count III Prayer for Relief).

13. In Plaintiff's Count IV (misidentified as Count V) Prayer for Relief, she requests as follows:

WHEREFORE, on Count V of her Verified First Amended Complaint for an Equitable Accounting, plaintiff Mary Richards respectfully prays for a judgment in her favor and against Option One by declaring that Option One has been unjustly enriched in its dealings with Plaintiff in connection with the Emerson Street Property, requiring ordering an accounting of all receipts taken in

4

by Option One in connection with the scheduled foreclosure on the Emerson Street Property and the bases therefore, and an order restoring Plaintiff to the position he would have been in but for Defendant's unlawful and inequitable conduct, including the loan fees and costs associated with the sub-prime, loan Plaintiff was induced to take-out on her Emerson Street Property, plus reasonable attorney's fees and costs of defense give the unique circumstances here, together with such further relief favoring Richards as this Court deems just and proper under the circumstances.

(Compl., at Count IV Prayer for Relief).

14. In Plaintiff's Count V (misidentified as Count VII and Count IX) Prayer for Relief, she requests as follows:

WHEREFORE, on Count IX of her Verified First Amended Complaint for violations of the District of Columbia Consumer Protection Procedures Act, plaintiff Mary Richards respectfully prays for a determination that Defendants knowingly and willingly conspired to engage in tortious acts for financial gain at Plaintiffs expense in connection with the Emerson Street Property, and to aware Plaintiff a judgment for compensatory and punitive damages, jointly and severally, against all Defendants, together reasonable attorney's fees, costs, interest and such further relief favoring Richards as this Court deems just and proper under the circumstances.

(Compl., at Count V Prayer for Relief).

## II. Removal Based On Federal Question Jurisdiction

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which reads as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, law or treaties of the United States."

16. Some of Plaintiff's claims are premised on violations of the Federal Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, and Regulation Z, 12 C.F.R. Section 226, *et seq.* This Court has original jurisdiction over those federal claims.

### III. Removal Based On Diversity Jurisdiction

17. This Court has jurisdiction over this action under 28 U.S.C. § 1332, which provides in relevant part: "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between – (1) citizens of different States . . . ."

18. There is complete diversity of citizenship among Plaintiff and the Defendants. Plaintiff alleges that she is a resident of the District of Columbia. (Compl., at ¶ 3). Defendant Option One is a corporation organized under the laws of the State of California and maintains its principal place of business in Irvine, California. (Compl., at ¶ 4). Defendant Alvin E. Gross, Jr. is a resident of the State of Maryland. (Compl. Caption). The amount in controversy requirement is satisfied as to Plaintiff's claims. In Count I of her Complaint, Plaintiff seeks a declaratory judgment to invalidate foreclosure proceedings, to invalidate any deeds of trust issued by, to or on behalf of Option One, to invalidate any security interest claimed or otherwise asserted by Option One, and to enjoin Option One from taking any adverse collection actions against her with respect to the Emerson Street Property, which was appraised at $375,000. (Compl., at Ex. 4). In Count IV, Plaintiff requests "an order restoring Plaintiff to the position [s]he would have been in but for Defendant's unlawful and inequitable conduct, including loan fees and costs associated with the sub-prime, loan . . . ." (Compl., at Count IV Prayer for Relief). Accordingly, the monetary effect of the Plaintiff's requested relief satisfies the jurisdictional amount. Additionally, in Count II of her Complaint Plaintiff seeks damages "reasonably believed to exceed $50,000 in the aggregate, . . ." (Compl., at Count II Prayer for Relief). Similarly, in Count III, Plaintiff claims damages "reasonably believed to exceed $50,000 in the aggregate, . . ." (Compl., at Count III Prayer for Relief). The damages for these two counts

combined, along with the damages sought through the remaining counts, again, satisfy the jurisdictional amount.

### IV. This Case Presents An Actual Case or Controversy

19. Plaintiff's allegations create an Article III "case or controversy" supporting removal.

### V. Removal Procedures

20. Removal of this case is proper under 28 U.S.C. § 1441(a), which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

21. A copy of all process and pleadings putatively served upon or otherwise received by Option One is attached hereto as **Exhibit A**.

22. Removal on federal question grounds and diversity is timely under 28 U.S.C. § 1446(b) because this Notice of Removal was filed within thirty days from the date on which Option One was served with or otherwise received the summons and complaint, December 4, 2007.

23. In accordance with 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal is being filed promptly with the Clerk of the Superior Court of the District of Columbia and served upon all parties of record.

Respectfully submitted,

Adam M. Spence (DC 455836)
Spence & Buckler, P.C.
100 West Pennsylvania Avenue, Suite 301
Towson, Maryland 21204
Tel:  410-823-5003
Fax:  443-836-9181
adam@spencebucklerlaw.com

Counsel for Option One Mortgage Corporation

by answr / perm.ss-n
G. Vann Canada, Jr. (DC 366414)
Miles & Stockbridge, PC
11 North Washington Street, Suite 700
Rockville, MD 20850
Tel:  301-762-1600
vcanada@milesstockbridge.com

Counsel for Defendant Alvin E. Gross, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January 2008, a copy of the foregoing Notice of

Removal was sent via electronic mail and mailed first class, postage prepaid, to

Rawle Andrews, Jr.
AARP Legal Counsel for the Elderly
601 E Street, NW, A4-410
Washington, DC 20049

Counsel for Plaintiff Mary Richards

G. Vann Canada, Jr.
Miles & Stockbridge, PC
11 North Washington Street, Suite 700
Rockville, MD 20850

Counsel for Defendant Alvin E. Gross, Jr.

Adam M. Spence

# EXHIBIT A

*Certified c*
*PIF*
*10/24/07* — *0022547574*

**Notice and Acknowledgment for Service by Mail**    OPTION ONE MORTGAGE CORP.
# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA    LEGAL DEPARTMENT
### Civil Division

DEC 04 2007

**DATE RECEIVED**

| Mary Richards |
|---|
*Plaintiff*

V.

Civil Action Number | 2007 CA 007760 |

| Option One Mortgage Corp |
|---|
*Defendant*

## NOTICE

To:    Name | Law Department - Option One Mortgage Corp |

Address |    3 Ada |

|    Irvine, CA 92618 |

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be taken against you or the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on
**(insert date)** | 11/28/07 |

*Signature*    | 11/28/2007 |
Date of Signature

### Acknowledgment of Receipt of Summons, Complaint and Initial Order

I received a copy of the summons, complaint and initial order in the above captioned matter at

**(address)** | |

| Signature |    | Relationship to Defedant/Authority |    | Date of Signature |
*To Receive Service*

Form CV(6)-1590/Mar 97



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MARY RICHARDS
    Vs.                         C.A. No.     2007 CA 007760 R(RP)
OPTION ONE MORTGAGE CORP

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge ROBERT E MORIN
Date:   November 26, 2007
Initial Conference: 9:30 am, Friday, February 29, 2008
Location:  Courtroom 517
               500 Indiana Avenue N.W.
               WASHINGTON, DC  20001

Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001    Telephone: 879-1133

MARY RICHARDS
*Plaintiff*

0007760-07

VS.

Civil Action No. [blank]

OPTION ONE MORTGAGE Corp.
*Defendant*

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 p.m., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

RAWLE ANDREWS JR.
Name of Plaintiff's Attorney  DC# 436283

601 E St NW #A4-410
Address

WASHINGTON, DC 20049

202-434-2158
Telephone

By [signature]
Deputy Clerk

Date 11/26/07

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 91

**NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

MARY RICHARDS, an individual, *
630 Emerson Street, NW, Washington, DC *
20011, (240) 765-8359, *

    Plaintiff, *

   v. *

      *
OPTION ONE MORTGAGE CORP., a *
foreign corporation, 3 Ada, Irvine, CA *
92618, (949) 790-8611; *

ALVIN E. GROSS, JR., an individual, 6905 *
Whittier Boulevard, Bethesda, MD 20817, *
(202) 321-5336, *
      *
    Defendants. *
      *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *

0007760-07

Civil Action No.: _____

RECEIVED
Civil Clerk's Office

NOV 2 6 2007

Superior Court of the
District of Columbia
Washington, D.C.

VERIFIED COMPLAINT FOR: (A)
DECLARATORY AND INJUNCTIVE
RELIEF; (B) B QUIET TITLE; (C) FRAUD;
(D) BREACH OF CONTRACT; (E)
CONSUMER PROTECTION VIOLATIONS;
(F) EQUITABLE ACCOUNTING; AND (G)
OTHER RELATED RELIEF

**JURY TRIAL DEMANDED**

### Action involving Real Property
### 630 Emerson Street, NW; D.C. Tax Reference No. 3214-0098

Plaintiff Mary Richards ("Richards" or "Plaintiff") for her Verified Complaint against

Defendants Option One Mortgage Corp. ("Option One"), Alvin E. Gross, Jr. ("Gross"), and all

other unknown persons or entities acting in concert with them (collectively "Defendants"),

hereby avers:

### <u>PRELIMINARY STATEMENT</u>

1. This action for declaratory judgment, injunctive relief and damages is brought to remedy

on-going instances of egregious misconduct and violations of Plaintiff's rights under federal and

local consumer protection and related laws by Option One, Gross and all persons or entities

acting in concert with Option One in: (a) presenting and persuading Richards to refinance her

property with an exotic, highly risky mortgage product with monthly payment obligations that

far exceed Richard's ability to repay the debt; (b) demanding the alleged pre-payment of monthly mortgage payments in the amount of $30,000 in connection with the mortgage on that certain residential real property situated at 630 Emerson Street, NW, Washington, DC 20011 (the "Emerson Street Property"); (c) failing to account for any of the $30,000 in mortgage pre-payments while at the same time initiating a foreclosure action related to the Emerson Street Property; (d) refusing to accept a refinancing of the mortgage obligation via Countrywide Home Loans to satisfy the entire balance of the mortgage while at the same time pursuing a foreclosure action related to the Emerson Street Property; (e) making false or materially misleading reports concerning the status of Plaintiff's mortgage account to credit reporting authorities; and (f) failing to provide the required notices and perform the other required procedures to consummate a foreclosure under District of Columbia law.

2.    Defendants' on-going misconduct against Plaintiff constitutes predatory lending and abusive debt collection practices.

## THE PARTIES

3.   At all relevant times, Plaintiff Mary Richards is a resident of the District of Columbia, and the record owner of the Emerson Street Property.

4.   On information and belief, defendant Option One Mortgage Group, Inc. is a financial services company with its principal place of business located in the State of California and that transacts business within the District of Columbia.  On further information belief, Option One is a subsidiary, division or affiliate of H & R Block, which is based in Kansas City, Missouri, and presently is the subject of acquisition negotiations by Cerberus Capital Management.

5.   On information and belief, Option One is one of the largest mortgage loan originators and loan servicers in the United States, with a specialization in sub-prime mortgage loans and related servicing activities.

6.   On information and belief, defendant Alvin E. Gross, Jr., is a local real estate "investor" who resides in or around the metropolitan Washington, DC area.

7.   On further information and belief, Defendant Gross is a partner or affiliate of Rodney Byrd, a well known "foreclosure rescue" artist who previously has faced significant legal difficulties in his efforts to dupe the elderly in the District.   *See generally* 07/07/2004 Washington Post article, attached hereto as Exhibit "1"; and, excerpt from D.C. Superior Court case styled, *Realty Investment Corp. v. Caroline Brady et al.*, 2001 CA 006950, an excerpt of which is attached hereto as Exhibit "2".

8.   Although not named individually as Defendants in this action, Plaintiff is informed and believes that Defendants were aided, abetted and/or counseled in their misconduct, which caused significant harm to Plaintiff by as yet unidentified persons or entities during the relevant timeframe.   Richards hereby reserves the right to amend, revise or otherwise supplement this Complaint to the extent third parties are identified during the course of this action that contributed in whole or part to Plaintiff's losses.

## JURISDICTION AND VENUE

9.   This Court has subject matter jurisdiction over this matter under the laws of the District of Columbia pursuant to Section 11-921 of the D.C. Code Annotated.

10. Venue is properly laid in this jurisdiction because the Emerson Street Property is situated within the District of Columbia and all or substantially all the dealings between the parties occurred within this jurisdiction.

3

## GENERAL ALLEGATIONS

11. Plaintiff is an infirm, senior citizen living on a fixed income of approximately $950/month (including SSI payments).

12. At all relevant times, Plaintiff was the record, fee simple owner of residential real property identified as the 630 Emerson Street, NW, Washington, DC 20012.  A true and correct copy of the Deed is attached hereto as Exhibit "3".

13. Plaintiff purchased the Emerson Street Property on May 29, 1964. The Emerson Street Property is a residential dwelling located in Northwest, Washington, D.C.

14. The property was not encumbered by any mortgage or third party lien at the time of Plaintiff's ill-fated dealings with Option One or its agents.

15. During the fall of 2006 (i.e., in the midst of the housing boom), Richards was induced to refinance her home with Option One under onerous terms and conditions that vastly exceeded her monthly income.

16. Specifically, the monthly payments called for under the new mortgage with Option One were for $1,749.00, while Plaintiff's monthly income (including SSI benefits) was only $950.00/month.

17. Moreover, Option One and its agents arranged for Richards to pay a Yield Spread Premium for this home loan without sufficient disclosure of the added consequences of that part of the transaction.

18. There was no conceivable way for Plaintiff to pay off this new and unnecessary mortgage to Option One given the onerous terms of the home loan and her limited monthly income.

4

19. The real estate mortgage financing transaction for the Emerson Street Property is a consumer loan that was secured by a deed of trust on real estate located in the District of Columbia.

20. During or about February 2007, a person holding himself out as a "representative" of Option One arrived at Richards' home and informed Plaintiff that she could make arrangements to pre-pay her monthly mortgage payment. This was a false or materially misleading representation.

21. Plaintiff complied with the Option One representative's demands by providing $30,000 in cash. To date, Plaintiff has never received any credit for making this advance payment to Option One.

22. As a means of remedying the financial harm caused by the predatory loan from Option One, Richards and her caregivers began working on alternative financing arrangements.

23. Eventually, Richards settled on a Reverse Mortgage as a means of satisfying the Option One mortgage loan and having additional funds for her daily living needs.

24. On or about July 27, 2007, Richards was advised that her application for a reverse mortgage with Countrywide Bank, FSB ("Countrywide") was approved in the amount of $375,000 was approved. *See* 07/27/2007 Commitment Letter from Countrywide to Plaintiff, attached hereto as Exhibit "2".

25. Among other things, the reverse mortgage would have paid off any and all existing indebtedness to Option One.

26. Option One knew or had reason to know of Plaintiff's efforts to satisfy the home mortgage obligation via a reverse mortgage with Countrywide during or at the time of

Defendant's improper foreclosure of the Emerson Street Property but Defendant steadfastly refused to provide any cooperation in getting this matter resolved before this action was filed.

27. Similarly, Defendant Gross knew or had reason to know of Plaintiff's efforts to satisfy the home mortgage obligation via a reverse mortgage with Countrywide during or at the time of Defendant's improper foreclosure of the Emerson Street Property, but Defendant steadfastly refused to provide any cooperation in getting this matter resolved before this action was filed.

28. Thereafter, On September 6, 2007, a Countrywide loan officer named Francisco Enriques contacted Plaintiff via her granddaughter and caregiver Kenya Raymond regarding the status of the loan. *See generally* Affidavit of Kenya Raymond, a true and correct copy of which is attached hereto as Exhibit "3"

29. During this September 6th telephone conversation, Mr. Enriques informed Ms. Raymond that she needed to contact Option One to see why Countrywide was having difficulty wire transfer the payoff amount to Option One.

30. Mr. Enriques and Ms. Raymond then proceeded to call Option One during which time Ms. Raymond discovered, *for the first time*, that Plaintiff's home was in foreclosure. Neither Plaintiff nor her caregivers ever received any written or verbal notice of foreclosure before that date.

31. Despite Plaintiff's and Countrywide's best efforts to payoff the Option One mortgage loan, including several telephone calls, Option One refused to accept the payoff apparently on the based on an Assistant Manager of Option One that, "we [Option One] don't have time to do the paperwork to accept the funds."

32. At approximately 5:00 p.m. (ET), Countrywide was advised by Option One that the Emerson Street Property was sold in foreclosure while Plaintiff's caregivers were on the telephone with the payoff ready for wire transfer.

33. When Ms. Raymond made a follow up inquiry of Option One regarding the ownership of the Emerson Street Property, she was advised that Option One still owned property. Then, after holding the phone line for approximately 20 minutes, Option One advised Ms. Raymond that the Emerson Street Property allegedly had been sold to a third party.

34. Option One's representatives took Ms. Raymond's name and telephone number and apparently forwarded the information to Defendant Gross.

35. Thereafter, Defendant Gross appeared at the Emerson Street Property unannounced and informed Ms. Raymond that he has "acquired" title to Plaintiff's home.

36. Since that time Defendant Gross has spoken to Plaintiff's caregivers in general terms about re-selling the home to Plaintiff, *at a premium*, but he has failed to provide any documentation or otherwise submitted proof of ownership or a *bona fide* intent to sell.

37. On October 7, 2007, Plaintiff received a statement from Option One providing details concerning repayment. After receiving this statement, Ms. Raymond called the Customer Resolution Center at Option One, which was listed at the bottom of the paper.

38. During these discussions, Ms. Raymond was advised by Option One representative words to the effect that "someone from Countrywide requested a payoff statement" but that statement apparently never made its way to Countrywide since the document was directed to Plaintiff's address. In other words, Option One never had any intention of providing the payoff information to Countrywide.

7

39. At the conclusion of the October 7th telephone call, Option One's representative advised Ms. Raymond that Plaintiff should be receiving any further communication of any kind from Option One, and further, that Plaintiff's name would be taken off the Option One call list.

40. The next day (October 8, 2007), a woman came to my residence and identified themselves as an Option One representative.

41. The Option One agent then proceeded to take photographs of the house.  When Ms. Raymond asked the woman to state the purpose of her visit to the Emerson Street Property, she flashed a business card that read "Mary Richards" and said call "Option One ASAP".

42. Finally, on October 9, 2007, a white male, appearing to be in his early to mid 30's, came to the Emerson Street house and asked to speak with Plaintiff.  Among other things, the stranger represented that:  (a) Plaintiff was expecting his arrival because: (b) he was there to collect a payoff check for Option One; (c) he has explained these arrangements to Plaintiff over the telephone and she had agreed to comply with these demands for the benefit of Option One.  The foregoing representations concerning contacts with Plaintiff were false or materially misleading because Plaintiff does not have a home telephone and takes the majority of her calls, if any, via her granddaughter's cellular phone.

43. When Ms. Raymond inquired about the stranger's name, he refused to provide it.  The stranger also refused to provide a business card apparently on the grounds that he did not have one.

44. Since that date, Defendant Gross has refused to provide any documentation regarding his alleged purchase of Richards' home.  Furthermore, Defendant Gross has issued a so-called Notice to Vacate threatening to evict Plaintiff from her home.  A true and correct copy of the Defendant Gross' Landlord-Tenant Complaint is attached hereto as Exhibit "4".

45. Accordingly, Plaintiff has no recourse but to seek immediate legal and equitable relief from this Court now.

## COUNT I

**(Declaratory Judgment to Set Aside Deeds and to Quiet Title versus All Defendants)**

46.    Plaintiff hereby incorporates all the allegations set forth in this Verified Complaint as if fully set forth herein.

47.    The parties have a justiciable dispute concerning their respective rights, interests and obligations under written agreements.

48.    For instance, Option One's home loan agreement violates local and federal lending statutes, rules and regulations because it fails to provide the notices to Richards due at the inception of a mortgage, including disclosures regarding the total cost of funds and monthly loan repayment obligations.

49.    The subject residential mortgage loan also was unlawful because it apparently was made to Plaintiff based solely on her equity in Emerson Street Property given her severely limited monthly income ($950/month) and the amounts of money that would be due and payable to maintain the monthly mortgage payments (over $1,700/month).

50.    Option One also failed to provide Plaintiff with any written notice of default or foreclosure knowing the Plaintiff would have no choice but to rely on them to her detriment on any verbal statements regarding the status of her mortgage account for purposes of seizing or attempting to seize Plaintiff's Emerson Street Property.

51.    Option One was required to provide Plaintiff with alleged reinstatement amounts under a residential mortgage if she indeed ever was in default on the home loan, and failed to do so.

9

52.   Absent Defendants' unlawful and improper conduct, Plaintiff never would have been forced to obtain a sub-prime, bridge loan to pay the artificially inflated sums demanded by Defendants to prevent foreclosure of the Emerson Street Property.

53.   All of the foregoing has and continues to prevent Plaintiff from refinancing her mortgage on the Emerson Street Property with another financial institution, particularly since Defendants apparently are unable or unwilling to provide an accurate payoff amount.

54.   Defendants are not authorized to wrongfully administer Plaintiff's mortgage for personal gain, or to knowingly and willfully take action that deprives Plaintiff's ability to exercise her legal rights under the mortgage instruments or applicable law.

55.   There is a legal dispute concerning whether Option One loan administration and Defendants' collection activities are permissible under applicable federal and District of Columbia law, including whether Defendants' misconduct constitutes unlawful trade practices and infringed on Plaintiff's right to cure an alleged default on a residential mortgage in the District of Columbia.

56.   Plaintiff also seeks a determination that defendants' misconduct, selectively or cumulatively, was so outrageous that it rises to the level of fraud, ill will, recklessness or willful disregard of Plaintiff's rights.

WHEREFORE, on Count I of her Verified First Amended Complaint, plaintiff Mary Richards respectfully prays for this Court to declare that: (a) the subject mortgage loan between Option One and Plaintiff was a predatory mortgage loan; (b) the was no valid foreclosure of the Emerson Street Property at anytime during 2007; (c) any deeds or deeds of trust issued by, to or on behalf of Defendant Option One, Defendant Gross or any unknown person entity acting in concert with them related to the Emerson Street Property is void *ab initio*; (d) any security

interest claimed or otherwise asserted by Option One at anytime before the improper foreclosure of the Emerson Street Property is deemed invalid; and (e) Option One, and all those acting in concert with them are permanently enjoined from taking any further adverse collection actions against Richards; and (g) Richards is entitled to reasonable attorney's fees and costs given the extreme nature of the circumstances here, together with such further relief favoring Richards as this Court deems just and proper under the circumstances.

COUNT II

**(D.C. Right to Cure Residential Mortgage Foreclosure Default Act --All Defendants)**

57.    Richards hereby incorporates all the allegations set forth in this Verified Complaint as if fully set forth herein.

58.    Defendants violated the D.C. Right to Cure Residential Mortgage Foreclosure Default Act by violating the FDCPA. Defendants violated the Truth in Lending Act, (15 U.S.C. §§ 1601 *et seq.*) and the implementing regulations commonly known as "Regulation Z," at 12 C.F.R. Part 226, *et seq.* (collectively, "TILA") by using false, abusive, ruse, sham or oppressive tactics to pursue the collection of monies allegedly due and owing under a residential real estate mortgage or to accomplish a foreclosure sale of residential real property without the required notice.

59.    Option One's misconduct created confusion for Plaintiff.

60.    Option One actions and omissions also were unfair and/or unconscionable means to collect a debt, including the creation of circumstances requiring Plaintiff to obtain a sub-prime mortgage loan on the Emerson Street Property based in whole or substantial part on her equity in the home and failing to provide the required foreclosure notices.

61.    Defendants' on-going misconduct against Plaintiff constitutes predatory lending practices.

62.   As a direct and proximate result of the foregoing, Defendants are liable to Richards for her actual damages, statutory damages and reasonable attorney's fees and costs.

WHEREFORE, on Count II of her Verified Complaint, plaintiff Mary Richards respectfully prays for a judgment in her favor and against Option One in an amount to be proven at trial, but reasonably believed to exceed $50,000 in the aggregate, statutory damages under the D.C. Right to Cure Residential Mortgage Foreclosure Default Act, together with interest, reasonable attorney's fees and costs, and such further relief favoring Richards as this Court deems just and proper.

## COUNT III

### (Breach of Contract versus Option One)

63.   Richards hereby incorporates the all the allegations set forth in this Verified Complaint as if fully set forth herein.

64.   The mortgage on the Emerson Street Property and related loan documents are written instruments that involve security interests in real property.

65.   As such, Option One owed duties good faith and fair dealing in dealing with Richards in both its loan administration and collection activities, including a duty to deal honestly with Plaintiff concerning the nature and extent of her obligations under the mortgage.

66.   As a result of the foregoing, Plaintiff is "on the hook" for monies allegedly due and owing to Option One that never should have charged in the first place.

67.   As a direct and proximate result of Option One's misconduct, Richards have suffered and continue to suffer damages, including the creation of circumstances requiring Plaintiff to defend herself in a Landlord-Tenant Court action to retain her possession, custody and control of the Emerson Street Property against Defendant Gross, an individual who knowingly and

willingly is attempt to deprive Plaintiff of her long-time home despite express knowledge of the material circumstances related to the dispute between Option One and Plaintiff.

WHEREFORE, on Count III of her Verified Complaint, plaintiff Mary Richards respectfully prays for a judgment in her favor and against Option One in an amount to be proven at trial but reasonably believed to exceed $50,000 in the aggregate, or alternatively, rescission of the parties' agreement, or reformation of the parties' agreement consistent with actual performance and the circumstances surrounding the transaction, together with interest, reasonable attorney's fees and costs, and such further relief favoring Richards as this Court deems just and proper.

## COUNT IV

### (Fraud versus all Defendants)

68.   Richards hereby incorporates all the allegations set forth in this Verified Complaint as if fully set forth herein.

69.   Defendants perpetrated a fraud on Plaintiff for purposes of carrying out a scheme to wrongfully foreclose on the Emerson Street Property.

70.   To carry out this illicit scheme, Defendants used false, abusive, ruse, sham or oppressive tactics to pursue the collection of monies allegedly due and owing under a residential real estate mortgage and/or to accomplish a foreclosure sale of residential real property in the District of Columbia without proper notice to Plaintiff.

71.   These unlawful acts and omissions includes, but is not limited to Defendants issuing false or materially misleading TILA notices to Plaintiff, that contains false or materially misleading information all for purposes of carrying out a foreclosure sale of the Emerson Street Property.

72.   Defendants also committed fraud against Plaintiff by failing to provide Richards with proper and timely notice of foreclosure on the Emerson Street Property.

73.   When Plaintiff and her caregivers attempted to make inquiries of Option One regarding this situation, Richards and her family initially were stonewalled and not provided with any meaningful information regarding the alleged arrearage or foreclosure on the Emerson Street Property.

74.   Thereafter, when Plaintiff's caregivers continued to make inquiries regarding the pre-litigation dispute, they were told that the Emerson Street Property had been sold in foreclosure to Defendant Gross.

75.   Immediately upon learning that Defendant Gross had something to do with this matter, Plaintiff's caregivers attempted to contact Defendant Gross to discuss or further investigate the matter.

76.   Among other things, Defendant Gross was rude, short and refused to provide any information to Plaintiff or her caregivers other that to assert *verbally* that he was the new owner of the property and intended to take possession of the home as soon as possible.

77.   Based on his prior operating behavior, Plaintiff has every right to be concerned about Defendant Gross' actions and motives because he previously has been accused of engaging in straw-man, residential land flipping schemes to defraud District senior's of their home equity. *See, e.g.*, Exhibit "2".

78.   As a direct and proximate result of Option One's actions, Richards has been traumatized, humiliated, embarrassed, suffered loss of sleep, intense stress, and emotional distress and deprived of the quiet ownership, use and enjoyment of her Emerson Street Property.

14

83. Option One's actions in receiving funds from Plaintiff to which it is not was accomplished by illicit means that were unfair and/or unconscionable, including the creation of circumstances requiring Plaintiff to obtain a sub-prime loan along with an unnecessary Yield Spread Premium that Defendant knew or has reason to know she could not afford.

84. Defendants' on-going misconduct against Plaintiff constitutes predatory lending practices.

WHEREFORE, on Count V of her Verified First Amended Complaint for an Equitable Accounting, plaintiff Mary Richards respectfully prays for a judgment in her favor and against Option One by declaring that Option One has been unjustly enriched in its dealings with Plaintiff in connection with the Emerson Street Property, requiring ordering an accounting of all receipts taken in by Option One in connection with the scheduled foreclosure on the Emerson Street Property and the bases therefore, and an order restoring Plaintiff to the position he would have been in but for Defendant's unlawful and inequitable conduct, including the loan fees and costs associated with the sub-prime, loan Plaintiff was induced to take-out on her Emerson Street Property, plus reasonable attorney's fees and costs of defense give the unique circumstances here, together with such further relief favoring Richards as this Court deems just and proper under the circumstances.

## COUNT VII

### (DCCPPA Violations versus all Defendants)

85. Richards hereby incorporates all the allegations set forth in this Verified Complaint as if fully set forth herein.

16

86.    The District of Columbia Consumer Protection Procedures Act, as codified at D.C. Code Ann. §§ 28-3901 *et seq*. ("DCCPA"), declares it an "***unlawful trade practice***" for a person to "make or enforce unconscionable terms or provisions of ***sales or leases***."

87.    Section 28-3904 of the DCCPA provides, in relevant part:

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead; and

(r) to make or enforce unconscionable terms or provisions of sales or leases.

88.    The DCCPA applies to real estate mortgage finance transactions.

89.    Defendants knowingly and intentionally provided false or materially misleading information to Plaintiff regarding her mortgage account for purposes of carrying out a scheme to wrongfully foreclose on the Emerson Street Property.

90.    To carry out this illicit scheme, Defendants used false, abusive, ruse, sham or oppressive tactics to induce Plaintiff to enter into a predatory a residential real estate mortgage or to accomplish an improper foreclosure sale of residential real property without the requisite notices required by law.

91.    Defendants' on-going misconduct against Plaintiff constitutes predatory lending practices.

92.    Intentional violations of the FDCPA and D.C. Right to Cure Residential Mortgage Foreclosure Default Act, like the instances of misfeasance alleged against Defendants in this action, also constitute violations of the DCCPA.

17

93. Defendants' misconduct is so outrageous that it rises to the level of fraud, ill will, recklessness or willful disregard of Plaintiff's rights.

94. As a direct and proximate result of Option One's actions, Richards has been traumatized, humiliated, embarrassed, suffered loss of sleep, intense stress, and emotional distress and deprived of the quiet ownership, use and enjoyment of her Emerson Street Property.

WHEREFORE, on Count IX of her Verified First Amended Complaint for violations of the District of Columbia Consumer Protection Procedures Act, plaintiff Mary Richards respectfully prays for a determination that Defendants knowingly and willingly conspired to engage in tortious acts for financial gain at Plaintiff's expense in connection with the Emerson Street Property, and to aware Plaintiff a judgment for compensatory and punitive damages, jointly and severally, against all Defendants, together reasonable attorney's fees, costs, interest and such further relief favoring Richards as this Court deems just and proper under the circumstances.

Respectfully submitted,

By: _____

Rawle Andrews Jr. (DC 446283)
AARP Legal Counsel for the Elderly
601 E. Street, NW, A4-410
Washington, DC 20049
Office: (202) 434-2158
Fax: (202) 434-6464
Email: Randrews@aarp.org
Attorney for Plaintiff

Dated: November 19, 2007

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff, by counsel, hereby demands a jury trial of all issues so triable.

_____

Rawle Andrews Jr. (DC 436283)
Counsel for Plaintiff

## VERIFICATION

I, Mary Richards, verify under penalty of perjury that the facts and statements contained in this Complaint related to the wrongful foreclosure of my home are true and correct to the best of my knowledge, information and belief.

*Mary K Richards*

Mary Richards

Subscribed and sworn to me before this 19 day of November, 2007

*Reina E More*

Notary Public

REINA E. MORE
Notary Public District of Columbia
My Commission Expires July 14, 2010

My commission expires: _____

# EXHIBIT "1"

washingtonpost.com    Hello randrews    The Washington Post
Change Preferences | Sign Out    Print Edition | Subscribe

| NEWS | POLITICS | OPINIONS | LOCAL | SPORTS | ARTS & LIVING | CITY GUIDE |

SEARCH: _____ go ◉ washingtonpost.com ○ Web: Results by Google™ | Search Arc

SHO



Pre-Owned from under
$8,900
SMART DRIVERS KNOW ROSANTHALAUTO.COM

washingtonpost.com > Metro > The District

# Judge Rules Against Foreclosure Rescuer
## Investor Ordered to Pay Widow's Estate

✉ E-Mail This Article
🖨 Print This Article
↰ Permission to Rep

*By Sandra Fleishman*
Washington Post Staff Writer
Wednesday, July 7, 2004; Page B01

Hattie Mae Smith was 70 and seriously ill when businessman Rodney Byrd first visited her Northwest Washington home. She was facing foreclosure on the house she had lived in for 25 years.



▼ ADVERTISING

Melwood
*Growing Together*

CLICK HERE to donate

The bedridden Smith, a retired post office supervisor, turned to Byrd and his Creative Investment Co. for a rescue. Within months, one of Byrd's partnerships wound up owning the home and reselling it for a profit -- and Smith was threatened with eviction.

Smith died in 2002, but not before getting legal help and filing a lawsuit against Byrd. Last week, a judge in D.C. Superior Court awarded her estate $415,000 in damages after finding that Byrd had no intention of helping Smith save her home and that his actions violated D.C. consumer protection laws.

Judge Joan Zeldon issued an opinion that called Byrd's conduct "outrageous." She wrote that Smith was not the first victim of his business dealings, and expressed hope in her ruling that the judgment will "deter Byrd from acquiring the homes of other frail and vulnerable people by illegal means."



Hattie Mae Smith was the victim rescue scam," her attorneys sa; ordered to pay her estate $415, Photo)

———Correction
A July 7 Metro article abo surrounding the foreclosu business of Rodney Byrd described Kevin Judd as ￼ partners. Byrd listed Judd in paperwork creating B& Partnership. However, a ｜ Court judge found that Ju his name was on the part and that he did not contri money to the entity.

———D.C. Governm
• Car Dealers' Woes Co Buyers (The Washington 2004)

Byrd, 37, who advertises himself as a foreclosure rescue specialist and property investor, denied wrongdoing and plans to appeal. In an interview last week, he disputed the allegations made against him in court and defended his business practices, adding, "I didn't force anyone to sign anything."

The AARP's Legal Counsel for the Elderly, which represented Smith and her family, has had clients prevail against Byrd in three other cases, according to AARP lawyers and court records. The other cases also involved people facing foreclosure who said that Byrd failed to help them, the records showed.

AARP lawyers said they fear the case is only one example of a bustling "foreclosure rescue scam" business in the Washington area and other cities where housing prices have skyrocketed.

"There are many low-income elderly residents living in valuable properties that are increasingly being targeted by unscrupulous con artists," said James T. Sugarman, a lawyer with AARP.

Sugarman urged property owners to be cautious in dealing with businesses that offer to rescue them from foreclosure. Those facing foreclosure, particularly over small amounts, can often renegotiate their loans or sell the properties for more than they owe, he said.

A banner outside Byrd's Tenleytown office promotes his services in stopping foreclosures and buying houses. His company circulates fliers to those facing foreclosure, following up on legal notices.

A recent flier, for example, says that the company offers "a number of creative programs that will allow you to keep your home." It adds: "You must act now, before someone else owns your home. Rest assured, The Creative Investment Company is here to help you."

Zeldon heard evidence about Smith's experience with Byrd during a trial in January and recapped the details in a pair of opinions issued later. In May, Zeldon held Byrd liable for damages. Then, last week, she set the amount.

When Smith got a flier in late 1999, the widow had about $150,000 equity in her house. Yet she had fallen about $2,300 behind on a $12,300 mortgage for her two-story brick rowhouse in the 1400 block of Monroe Street NW, in Columbia Heights, Zeldon wrote. She was current on a $38,000 mortgage. Several foreclosure sale notices for the house had been published.

Smith had been hospitalized with serious circulatory problems for a month that fall, Zeldon wrote. Her doctor told the court that Smith had periods of confusion during the hospital stay and that she was emaciated. She was released in November 1999 to a bedroom in her home equipped with a wheelchair and hospital bed.

**CONTINUED**

1 2    Next >

• Fleeing D.C. Teen Cra
Die (The Washington Pos
2004)
• Teenager Held Witho
of 2 Slayings (The Wash
Jul 15, 2004)
• No Longer a Minor Ma
Washington Post, Jul 15,
• More Stories

————Free E-mail New:
• News Headlines
• News Alert

Subscribe to The Wash

Advertisemen

TOP JOBS from lo

• Senior Systems Devel
Communications
• IT Jobs/ FRIENDSHIP P
CHARTER SCHOOL
• Email Programs Mana
Washingtonpost. Newsw
• Cbrn Senior Analystpr
Managerbene/ The Tat
• Engineer/ Eastern Rese
All Top Job

FEATURED ADVERTISER

Be Prepared. Fight Identity
Equifax.com.

Questions about the Medtr
recall?, Mesothelioma

T-Shirts, Football T-
Shirts, Koozies, Custom T-

Cool gadgets, hot deals. V
CircuitCity.com today

T-Mobile, Verizon Wireless
AT&T Phones

Earn 4.20% APY at ING DIF
and No Minimums.

Vanguard's Best and Wors
Own Now

<u>Print This Article</u>

© 2004 The Washington Post Company

Navigate to News Sections 

Navigate the Metro Sec



NEWS | POLITICS | OPINIONS | LOCAL | SPORTS | ARTS & LIVING | CITY GUIDE                    JOI

SEARCH: 

washingtonpost.com: About Us | Work for Us | Advertisers | Site Map | Search Terms | Topics Index | Make us your homepage | mywashingtonpost.com | Mobile | RSS | Widgets
The Washington Post: Subscribe | Subscriber Services | Advertisers | Electronic Edition | Online Photo Store | The Washington Post Store | About The Post | National Weekly
The Washington Post Company: Information and Other Post Co. Websites

© Copyright 1996- 20072007 The Washington Post Company | User Agreement and Privacy Policy | Rights and Permissions

Help | Contact Us

# EXHIBIT "2"

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

REALTY INVESTMENT CORPORATION
1935 Upshur Street, NW
Washington, D.C. 20011



ALVIN E. GROSS, Jr.
1935 Upshur Street, NW
Washington, D.C. 20011

      Plaintiffs/counter-defendants,

v.                                      Case No. 01CA6950

CAROLINE BRADY, ex rel.                  ACTION INVOLVING
REAL
ELIZABETH PEAY                         PROPERTY
1224 Ingraham Street, , N.W.
Washington, D.C. 20011
      Defendant/counter-plaintiff

---

ELIZABETH PEAY
1224 Ingraham Street, NW
Washington, D.C. 20011

      Third Party Plaintiff

      v.

RODNEY BYRD
4708 Wisconsin Ave., N.W.
Washington, D.C. 20016

PHOENIX (PHONEIX)GENERAL PARTNERSHIP

1

4708 Wisconsin Avenue, NW
Washington, D.C. 20016

MONSEE (MONSI) FERNANDEZ
4708 Wisconsin Avenue, NW
Washington, D.C. 20016

EVERETT HALL
922 8th Street, NE
Washington, D.C.
or
5345 Wisconsin Avenue, NW
Washington, D.C. 20015

INDYMAC MORTGAGE BANK, FSB
144 Northlake Avenue
Pasadena, CA 91101


      Third Party Defendants.


**AMENDED VERIFIED ANSWER, COUNTERCLAIMS, AND PLEA OF TITLE**

INTRODUCTION

This Answer, Counterclaims and Plea of Title seeks to reverse the fraud committed upon

defendant Elizabeth Peay, an 83  year old widow who had lived in her home at 1224 Ingraham

Street, NW for the past forty years. Ms. Peay died January 8, 2002 and the personnel

Representative is hereby being substituted to pursue this litigation. In November, 2000, Plaintiff,

Alvin Gross, and fellow conspirator, Rodney Byrd, acting on behalf of themselves and Phoenix

General Partnership, fraudulently obtained and recorded title to Ms. Peay=s home.  Then, in a

series of straw man transactions, Mr. Gross and Mr. Byrd  cashed out the equity in Ms. Peay=s

2

home in two subsequent loans.  Plaintiff and Byrd subsequently had Ms. Peay sign a month-to-

month  rental agreement while leading her to believe the house still belonged to her and the

agreement was for purposes of reimbursing them for saving the home.  Plaintiffs are now

attempting to evict Personnel Representative from her home under the names, Realty Investment

Corporation and in a subsequent L&T action, Alvin Gross.

     Personnel Representative seeks dismissal of this eviction action, that title to the Property

be quieted in her ownership which ownership was divested from her by the unlawful acts of

Realty Investment Corp, Phoenix General Partnership and its partners: Mr. Gross, Mr. Byrd and

Mr. Monsi (or Monsee) Fernandez, and IndyMac Mortgage Bank.  In addition to reclaiming

ownership to the deceased=s property, the estate of Peay seeks damages and other equitable

relief.


## ANSWER


     Defendant, personnel representative for Elizabeth Peay, by undersigned counsel, answers

the two Complaints for Possession of Real Estate filed by Realty Investment Corp and Alvin

Gross as follows:

     1.     Personnel Representative admits being in possession of the subject premises, but

denies that she holds possession without right and further denies that Realty Investment Corp or

its unidentified principals are entitled to possession.

     2.     Personnel Representative denies that she is a tenant of Realty Investment Corp or

its unidentified principals, denies that Realty Investment Corp or its unidentified principals are

# EXHIBIT "3"

BOOK 12225   PAGE 449

**District of Columbia, to wit:**

I, _Richard R. Zugherman_, a Notary Public in and for the District aforesaid,
*HEREBY CERTIFY* that _James Eddie Burns and Mabel C. Burns_

who _are_ personally well known to me as the grantor_s_ in, and the person_s_ who executed
the aforegoing and annexed deed, dated _May 29th_ A. D. 19 _64_, personally appeared
before me in the said District and acknowledged the said deed to be _their_ act and deed

*Given* under my hand and seal this _29th_ day of _May_, 19_64_.

_Richard R. Zugherman_
*Notary Public*

# EXHIBIT "4"

 **Countrywide Bank**®

July 27, 2007

Countrywide Bank, FSB
Reverse Mortgage Processing Center
MS TPSA-281
1330 West Southern Avenue
Tempe, AZ 85282-4545
Fax: (866) 327-9877

Mary K Richards
630 Emerson Street NW
Washington, DC 20011

RE: Loan # 151438190

Dear Borrowers:

Congratulations!  Your application for a reverse mortgage has been approved with the following terms:

| | |
|---|---|
| Product: | Standard HECM Monthly |
| Appraised Value: | $375,000.00 |
| Loan Amount: | $280,073.88 |
| | The loan amount is based on interest rates.  It is possible that the movement of interest rates could cause your loan amount to be higher or lower at the time of loan closing. |
| Interest Rate: | To be determined at closing by adding a margin of 1.00% to the index value in effect at that time.  The interest rate will adjust monthly. |
| Payment Plan: | Line of Credit |

The Loan Amount above is the Gross Benefit for which you are eligible and the loan amount for which you have been approved.  At closing there will be a number of deductions from that amount that will reduce your actual cash proceeds or available proceeds going forward.  These deductions will include:  (1) origination fee (up to 2% of your home value); (2) mortgage insurance premium or mortgagee insurance fee (up to 2% of your home value); (3) a servicing fee set-aside; (4) a set-aside for repairs, if applicable; (5) other closing costs (see your Good Faith Estimate for estimates of various closing costs); (6) payments for property taxes and/or property insurance premiums, if applicable.  In addition, the amounts to pay off any existing liens against your property or other amounts that you direct us to pay will also be deducted from the available proceeds.  Be sure you discuss these deductions with your loan specialist so you understand their impact on your available proceeds.

The Payment Plan indicated above is as you have selected at this time.  You may change your selected Payment Plan option at any time.

This approval expires on September 25, 2007 and your Loan Amount is subject to change after that date.

Page 1 of 3





# EXHIBIT "5"

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MARY RICHARDS, an individual    *

                  *

                  *

     Plaintiff,         *

v.                        *

                  *

OPTION ONE MORTGAGE CORP. *

a foreign corporation; ALVIN E.    *

GROSS, JR., an individual;      *

JOHN AND JANE DOES 1-100,     *

individuals whose names and      *

address are unknown; and JOHN     *

DOE BUSINESS ORGANIZATIONS,

whose names and addresses are     *

unknown,                 *

                  *

                  *

     Defendants.       *

## AFFIDAVIT OF KENYA D. RAYMOND

**WASHINGTON**                   §

                                  §    ss

**DISTRICT OF COLUMBIA**       §

1. I am over twenty-one years (21) of age, have never been convicted of a felony or crime involving moral turpitude, and am fully qualified to make this Affidavit. I have personal knowledge of the facts and circumstances set forth in this Affidavit, and I am competent to testify on these facts and circumstances if called upon to do so.

2. I currently reside with my grandmother and the Plaintiff in this case, Mary Richards, at 630 Emerson Street, NW, Washington, DC 20011. I have resided at my grandmother's home since 1986.

3. My grandmother bought her home on Emerson Street with her niece and her mother Eva

Mildred Richards on May 29, 1964.

4. My grandmother is an 83 year old, homebound senior who typically does not come out of the house except for doctor's visits. I am one of her primary caregivers.

5. I am unaware of anybody outside my family who has ever claimed an ownership interest in the Emerson Street home until my family began having problems with Option Mortgage Corporation earlier this year.

6. My grandmother is on a fixed income of approximately $950 per month.

7. Specifically, during November 2006, Option One induced my grandmother into refinancing her home as part of the local real estate boom.

8. The loan was flawed for many reasons, including the fact although not disclosed to my grandmother than the monthly mortgage payment was over $1,747.88 per month despite the fact that she only brought $950 per month in total income, including Social Security and Retirement Income.

9. In an attempt to relieve my grandmother of this one-side and plainly unfair mortgage with Option One, I helped my grandmother pursue a reverse mortgage with Countrywide Mortgage Company.

10. After completing the reverse mortgage application and related paperwork, my grandmother received written notice from Countrywide Mortgage dated July 27, 2007, that she had qualified to receive the loan in the amount of $280,073.88.

11. Among other things, the reverse mortgage from Countrywide Mortgage was sufficient to payoff Option One in full. Unfortunately, the reverse mortgage was never closed due to Option One's the interference or refusal to cooperate with the payoff process.

12. Specifically, on September 6, 2007, a Countrywide loan officer named Francisco

2

Enriques contacted me regarding the status of my grandmother's reverse mortgage loan. During this telephone call, Mr. Enriques informed me that my family needed to contact Option One immediately to see why Countrywide was having difficulty wire transferring the payoff amount to Option One.

13. Mr. Enriques and I called Option One together during which time I learned that my grandmother's home was in foreclosure. My grandmother and I had never received any written or verbal notice of foreclosure from Option One or any person or entity indicating they were acting on behalf of Option One before that date.

14. Despite best efforts by my family and Countrywide Mortgage to payoff the Option One mortgage loan, including several telephone calls, Option One refused to accept the payoff apparently based on the word of an Assistant Manager of Option One who insisted, "we [Option One] don't have time to do the paperwork to accept the funds."

15. At approximately 5:00 p.m. on September 6th, Countrywide Mortgage was advised by Option One that my grandmother's long-time home on Emerson Street was sold in foreclosure at the very same time that I on hold on the telephone with the payoff information ready for wire transfer to take place.

16. When I made follow up calls to Option One regarding the ownership of the Emerson Street Property, I initially was advised that Option One still owned the home. Then, after holding the phone line for approximately 20 minutes, Option One informed me that the Emerson Street Property allegedly had been sold to a third party.

17. Option One's representatives took my names and telephone number and apparently forwarded the information to Mr. Alvin Gross, Jr., the person who now claims to own my grandmother's home.

18. On the same day as the alleged foreclosure, Mr. Gross appeared at our family home on Emerson Street Property, unannounced, and informed me he bought my mother's home at a foreclosure sale that day. Mr. Gross did not provide me with any paperwork or receipt showing that he had any interest at all in the home.

19. Since that time I have spoken with Mr. Gross on several occasions, initially to find out whether he really had paperwork to claim ownership of my grandmother's home; later because Mr. Gross was threatening my family and me with eviction, including throwing us out on the street with or without the aid of the Marshall, and most recently because Mr. Gross or his agents taped a court notice from the Landlord-Tenant Court to the Emerson Street door on October 24, 2007.

20. On October 7, 2007, my grandmother received a statement in the mail from Option One providing details concerning repayment. After receiving this statement, I called the Customer Resolution Center at Option One, which was listed at the bottom of the paper.

21. During these discussions, an Option One representative told me that "someone from Countrywide requested a payoff statement" but that statement apparently never made its way to Countrywide since the document was directed to Plaintiff's address.

22. In other words, Option One never had any intention of providing the payoff information to Countrywide. At the conclusion of the telephone call, Option One's representative told me that Plaintiff should be receiving any further communication of any kind from Option One, and further, that my grandmother's name would be taken off the Option One call list.

23. On October 8, 2007, a woman came to my residence and identified themselves as an Option One representative. The Option One agent then proceeded to take photographs of the house. When I asked the woman to state the purpose of her visit to the Emerson Street Property,

4

she flashed a business card that read "Mary Richards" and said call "Option One ASAP".

24. Finally, on October 9, 2007, a white male, appearing to be in his early to mid 30's, came to the Emerson Street house and asked to speak with my grandmother.  Among other things, the man said my grandmother was expecting his arrival; he was there to collect a payoff check for Option One; and he has explained these arrangements to my grandmother over the telephone and she had agreed to comply with these demands for the benefit of Option One.

25. The foregoing representations concerning contacts with Plaintiff were false or materially misleading because my grandmother does not have a home telephone and takes the majority of her calls, if any, via her granddaughter's cellular phone.  When I inquired about the stranger's name, he refused to provide it.

26. The stranger also refused to provide a business card apparently on the grounds that he did not have one.  After this refusal, I asked the stranger to contact my grandmother's attorney at Legal Counsel for the Elderly, at which point, he refused and made a quick exit back up the road to his car that mysteriously was parked up the block from our home.

27. Then, on October 21, 2007, Mr. Gross called my cell phone at about 6:30 p.m., indicating he was ready to take possession of my grandmother's home. Before the conversation ended, I informed him that I did not believe Option One had been honest with the parties and that we should meet face-to-face to attempt to resolve this matter.

28. Mr. Gross indicated that he did not see any reason for us to meet because he was in control of the property and that we had to move out immediately.

29. As a result of all this confusion, miscommunication and falsehoods that have been given to me and my family by Option One and Mr. Alvin Gross, Jr., it does not appear that this matter can resolved unless the Court steps in to stay this matter until all the facts can be presented and analyzed.

FURTHER AFFIANT SAYETH NOT.

_Kenya Raymond_

Kenya Raymond, an Individual
Plaintiff

Before me _Mary K Richards_____, Notary Public in and for the District of Columbia, on this day personally appeared <u>Kenya Raymond</u>, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledgement to me that she executed the same, that she had personal knowledge of the facts stated herein and that said facts were true and correct to the best of her knowledge, information and belief.

_Reina E More_____

Notary Public in and for the District of Columbia

Subscribed and sworn to before me this the _19_ day of November, 2007.

My Commission Expires on: _____

REINA E. MORE
Notary Public District of Columbia
~~My Commission Expires July 14, 2010~~

# EXHIBIT "6"

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION, LANDLORD AND TENANT BRANCH
Bldg. B, 510 4th Street, NW, RM. 110

Washington, DC 20001    Telephone (202) 879-1152    L&T.

035922 07

Alvin E. Gross Jr _____ vs. Mary K. Richards and others

Plaintiff/Landlord

6905 Whittier Blvd
Address

Bethesda MD 20817

202-321-5336                    Zip Code

Defendant/Tenant

630 Emerson St NW
Address

Washington, D.C.                    20011

Zip Code

### COMPLAINT FOR POSSESSION OF REAL ESTATE

DISTRICT OF COLUMBIA, ss:

Alvin E. Gross Jr _____, being first duly sworn, states: ☒ he or she is the landlord and/or ☐ licensed real estate broker or ☐ the landlord's authorized agent of the house, apartment or office located at 630 Emerson St NW    20011 _____, Washington, D.C.
The property is in the possession of the defendant, who holds it without right.
The landlord seeks possession of the property because:

A. ☐ The tenant failed to pay: $ _____ , total rent due from _____ to _____ ; $ _____
      late fees; and/or $ _____ , other fees (Specify)
      The monthly rent is $ _____ . The total amount due to the landlord is $ _____
      Notice to quit has been: ☑ served as required by law ☐ waived in writing.
B. ☑ Tenant failed to vacate property after notice to quit expired. (copy attached).
C. ☑ For the following reason: (explain fully)
   Former owners are occupants who were foreclosed
   upon and have no tenants rights
      Notice to quit is:  ☐ not required  ☐ waived in writing  ☑ other

Therefore, the landlord asks the Court for:
   ☑ judgment for possession of the property described.
   ☐ judgment for rent, late fees, other fees and costs in the amount of $ _____ .
   ☐ an order of the Court that all future rent be paid into the Registry of the Court until the case is decided.

_____
Plaintiff / Landlord or Agent

Subscribed before me this    1 6 OCT 2007    day of _____

STEVEN H. JOHNSON

Notary Public DEPUTY CLERK    My Commission expires _____

### SUMMONS — TO APPEAR IN COURT

NOV - 7 2007

YOU ARE HEREBY SUMMONED AND REQUIRED TO APPEAR ON _____ AT 9:00 A.M. PROMPTLY, in Landlord and Tenant Court, Courtroom Bldg. B, 510 4th Street N.W. to answer your landlord's complaint for possession of the premises listed in the above complaint. If you live on the premises and you are not named as a tenant you must come to court if you claim a right to possession of the premises.

### CONVOCATORIA — DE COMPARENCIA AL TRIBUNAL

NOV - 7 2007

A USTED SE LE ORDENA Y EXIGE QUE COMPAREZCA EL _____, A LAS _____ A.M. al Tribunal de Arrendadores y Arrendatarios, Edificio B, 510 4th Street N.W. a contestar la demanda entablada por ocupacion de la propiedad aqui citada. Si usted vive en esa propiedad sin que se le mencione como inquilino, debe presentarse al Tribunal para reclamar cualquier derecho de ocupacion que tenga sobre la misma.

Plaintiff's/Landlord's Attorney
Abogado del demandante/Arrendador

_____
Address/Direccion    Zip Code/Codigo postal

_____
Phone No    Unified Bar No.
Telefono    No. de afiliacion
           Sociedad de Abogados

CLERK OF THE COURT
SECRETARIO DEL TRIBUNAL

Costs of this suit to date are
Costos del juicio hasta la fecha

$ 79.00

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

| | |
|---|---|
| MARY RICHARDS      .    * | |
|          * | |
|      **Plaintiff**    * | |
|          * | |
|     vs.        * | **Civil Action No. 2007 CA 007760 R(RP)** |
|          * | |
| OPTION ONE MORTGAGE CORP., et al.    * | |
|          * | |
|      **Defendants**    * | |
|          * | |

## ANSWER OF DEFENDANT, ALVIN E. GROSS, JR.

COMES NOW the Defendant, Alvin E. Gross, Jr. by his undersigned counsel and for an Answer to the Complaint filed herein by the Plaintiff, Mary Richards, states as follows:

### FIRST DEFENSE

That all counts in the Complaint fail to state claims upon which relief can be granted.

### SECOND DEFENSE

That the claims of the Plaintiff are barred, in whole and in part, by the doctrines of waiver estoppel.

### THIRD DEFENSE

That the claims of the Plaintiff are barred, in whole and in part, by the doctrine of laches.

### FOURTH DEFENSE

That for a fourth defense this Defendant, in response to the allegations contained in the Complaint, states as follows:

1.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 1 of the Complaint and therefore denies the same, demanding strict proof thereof.

2.     Defendant denies the allegations contained in paragraph 2 of the Complaint.

3.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 3 of the Complaint and therefore denies the same, demanding strict proof thereof.

4.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 4 of the Complaint and therefore denies the same, demanding strict proof thereof.

5.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 5 of the Complaint and therefore denies the same, demanding strict proof thereof.

6.     Defendant admits the allegations contained in paragraph 6 of the Complaint.

7.     Defendant denies the allegations contained in paragraph 7 of the Complaint.

8.     Defendant denies the allegations contained in paragraph 8 of the Complaint.

9.     Defendant admits the allegations contained in paragraph 9 of the Complaint.

10.     Defendant admits the allegations contained in paragraph 10 of the Complaint.

11.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 11 of the Complaint and therefore denies the same, demanding strict proof thereof.

12.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 12 of the Complaint and therefore denies the same, demanding strict proof thereof.

13.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 13 of the Complaint and therefore denies the same, demanding strict proof thereof.

14.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 14 of the Complaint and therefore denies the same, demanding strict proof thereof.

15.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 15 of the Complaint and therefore denies the same, demanding strict proof thereof.

16.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 16 of the Complaint and therefore denies the same, demanding strict proof thereof.

17.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 17 of the Complaint and therefore denies the same, demanding strict proof thereof.

18.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 18 of the Complaint and therefore denies the same, demanding strict proof thereof.

19.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 19 of the Complaint and therefore denies the same, demanding strict proof thereof.

20.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 20 of the Complaint and therefore denies the same, demanding strict proof thereof.

21.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 21 of the Complaint and therefore denies the same, demanding strict proof thereof.

22.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 22 of the Complaint and therefore denies the same, demanding strict proof thereof.

23.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 23 of the Complaint and therefore denies the same, demanding strict proof thereof.

24.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 24 of the Complaint and therefore denies the same, demanding strict proof thereof.

25.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 25 of the Complaint and therefore denies the same, demanding strict proof thereof.

26.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 26 of the Complaint and therefore denies the same, demanding strict proof thereof.

27.     Defendant denies the allegations contained in paragraph 27 of the Complaint.

28.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 28 of the Complaint and therefore denies the same, demanding strict proof thereof.

29.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 29 of the Complaint and therefore denies the same, demanding strict proof thereof.

30.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 30 of the Complaint and therefore denies the same, demanding strict proof thereof.

31.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 31 of the Complaint and therefore denies the same, demanding strict proof thereof.

32.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 32 of the Complaint and therefore denies the same, demanding strict proof thereof.

33.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 33 of the Complaint and therefore denies the same, demanding strict proof thereof.

34.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 34 of the Complaint and therefore denies the same, demanding strict proof thereof.

35.     Defendant admits the allegations contained in paragraph 35 of the Complaint.

36.     Defendant admits speaking to some unidentified person in general terms about reselling the home to the Plaintiff, but denies all other allegations contained in paragraph 36 of the Complaint.

37.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 37 of the Complaint and therefore denies the same, demanding strict proof thereof.

38.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 38 of the Complaint and therefore denies the same, demanding strict proof thereof.

39.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 39 of the Complaint and therefore denies the same, demanding strict proof thereof.

40.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 40 of the Complaint and therefore denies the same, demanding strict proof thereof.

41.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 41 of the Complaint and therefore denies the same, demanding strict proof thereof.

42.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 42 of the Complaint and therefore denies the same, demanding strict proof thereof.

43.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 43 of the Complaint and therefore denies the same, demanding strict proof thereof.

44.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 44 of the Complaint and therefore denies the same, demanding strict proof thereof.

45.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 45 of the Complaint and therefore denies the same, demanding strict proof thereof.

## COUNT 1

46.    This Defendant incorporates by reference all prior answers to paragraphs 1 through 45 above as if fully repeated.

47.    Defendant denies the allegations contained in paragraph 47 of the Complaint.

48.    Defendant denies the allegations contained in paragraph 48 of the Complaint.

49.    Defendant denies the allegations contained in paragraph 49 of the Complaint.

50.    Defendant denies the allegations contained in paragraph 50 of the Complaint.

51. Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 51 of the Complaint and therefore denies the same, demanding strict proof thereof.

52. Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 52 of the Complaint and therefore denies the same, demanding strict proof thereof.

53. Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 53 of the Complaint and therefore denies the same, demanding strict proof thereof.

54. Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 54 of the Complaint and therefore denies the same, demanding strict proof thereof.

55. Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 55 of the Complaint and therefore denies the same, demanding strict proof thereof.

56. Defendant denies the allegations contained in paragraph 56 of the Complaint.

## COUNT II

57. This Defendant incorporates by reference all prior answers to paragraphs 1 through 56 above as if fully repeated.

58. Defendant denies the allegations contained in paragraph 58 of the Complaint.

59. Defendant denies the allegations contained in paragraph 59 of the Complaint.

60. Defendant denies the allegations contained in paragraph 60 of the Complaint.

61. Defendant denies the allegations contained in paragraph 61 of the Complaint.

62. Defendant denies the allegations contained in paragraph 62 of the Complaint.

## COUNT III

63.     This Defendant incorporates by reference all prior answers to paragraphs 1 through 62 above as if fully repeated.

64.     Defendant admits the allegations contained in paragraph 64 of the Complaint.

65.     Defendant admits the allegations contained in paragraph 65 of the Complaint.

66.     Defendant denies the allegations contained in paragraph 66 of the Complaint.

67.     Defendant denies the allegations contained in paragraph 67 of the Complaint.

## COUNT IV

68.     This Defendant incorporates by reference all prior answers to paragraphs 1 through 67 above as if fully repeated.

69.     Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.     Defendant denies the allegations contained in paragraph 70 of the Complaint.

71.     Defendant denies the allegations contained in paragraph 71 of the Complaint.

72.     Defendant denies the allegations contained in paragraph 72 of the Complaint.

73.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 73 of the Complaint and therefore denies the same, demanding strict proof thereof.

74.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 74 of the Complaint and therefore denies the same, demanding strict proof thereof.

75.     Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 75 of the Complaint and therefore denies the same, demanding strict proof thereof.

76.     Defendant denies the allegations contained in paragraph 76 of the Complaint.

77.     Defendant denies the allegations contained in paragraph 77 of the Complaint.

78.    Defendant denies the allegations contained in paragraph 78 of the Complaint.

## COUNT V

79.    This Defendant incorporates by reference all prior answers to paragraphs 1 through 78 above as if fully repeated.

80.    Defendant admits the allegations contained in paragraph 80 of the Complaint.

81.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 81 of the Complaint and therefore denies the same, demanding strict proof thereof.

82.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 82 of the Complaint and therefore denies the same, demanding strict proof thereof.

83.    Defendant states that he is without sufficient information to admit or deny the allegations contained in paragraph 83 of the Complaint and therefore denies the same, demanding strict proof thereof.

84.    Defendant denies the allegations contained in paragraph 84 of the Complaint.

## COUNT VII

85.    This Defendant incorporates by reference all prior answers to paragraphs 1 through 84 above as if fully repeated.

86.    Paragraph 86 of the Complaint contains a statement of law which requires no response.

87.    Paragraph 87 of the Complaint contains a statement of law which requires no response.

88.    Defendant denies the allegations contained in paragraph 88 of the Complaint.

89.    Defendant denies the allegations contained in paragraph 89 of the Complaint.

90.    Defendant denies the allegations contained in paragraph 90 of the Complaint.

91.   Defendant denies the allegations contained in paragraph 91 of the Complaint.

92.   Defendant denies the allegations contained in paragraph 92 of the Complaint.

93.   Defendant denies the allegations contained in paragraph 93 of the Complaint.

94.   Defendant denies the allegations contained in paragraph 94 of the Complaint.

WHEREFORE, this Defendant, having fully answered the allegations contained in the Complaint, prays that all counts in the Complaint be dismissed with costs.

Respectfully submitted,

/s/ G. Vann Canada, Jr.
G. Vann Canada, Jr., Bar No. 366414
vcanada@milesstockbridge.com
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, Maryland 20850
(301) 762-1600

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of January, 2007, the foregoing was filed using

the CaseFileXpress system and that the following will receive notice thereby:

> Rawle Andrews, Jr.
> AARP Legal Counsel for the Elderly
> 6001 E. Street, N.W., A4-410
> Washington, D.C.  20049
> *Attorney for Plaintiff*

And via first class mail, postage prepaid, to:

> Option One Mortgage Corp.
> 3 Ada
> Irvine, CA  92618
> *Defendant*

> /s/ G. Vann Canada, Jr.
> G. Vann Canada, Jr.

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I. (a) PLAINTIFFS

Mary Richards, 630 Emerson Street, NW, Washington DC, 20011

**DEFENDANTS**

Option One Mortgage Corporation, 3 Ada, Irvine, CA 92618

Alvin E. Gross, Jr., 6905 Whittier Blvd, Bethesda, MD 20817

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    DC
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Rawle Andrews, AARP Legal Counsel for the Elderly, 601 E Street, NW, A4-410, Washington, DC 20049

Case: 1:08-cv-00007
Assigned To : Friedman, Paul L.
Assign. Date : 1/2/2008
Description: General Civil

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

● 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ● 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

● **E.** *General Civil (Other)*    OR    ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ⊙ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 1332

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** $100,000+ <br> **JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒    NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 01/02/2008    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.