UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY RICHARDS,

    Plaintiff,

v.

                          Civil Action No.: 1:08-CV-0007 (PLF)

OPTION ONE MORTGAGE CORP.;
ALVIN E. GROSS, JR.,

    Defendants.

## PLAINTIFF RICHARDS' SUPPLEMENTAL MEMORANDUM RE: BFP AND WRONGFUL FORECLOSURE

Pursuant to the Court's instructions, Plaintiff Mary K. Richards ("Richards" or "Plaintiff"), by and through undersigned counsel, respectfully submits this Supplemental Memorandum. As set forth more fully herein and in the accompanying materials, the foreclosure by Defendant Option One was wrongful because Option One did not strictly adhere to the D.C. foreclosure laws. Furthermore, Defendant Gross was not a bona fide purchaser because he had actual notice of the dispute over foreclosure proceedings when he closed on the "sale." Thus, Plaintiff Richards is entitled to relief from a wrongful foreclosure. She seeks relief by requesting the wrongful foreclosure is set aside and she is restored to her situation prior to the wrongful foreclosure.

## I. BACKGROUND[1]

Plaintiff Mary K. Richards is an infirm, homebound senior citizen. *See* Plaintiff Richards' Statement of Disputed Facts in Response to Defendant Option One's Motion

---

[1] Plaintiff hereby reincorporates here responses and supporting motions to both Defendants' respective motions for summary judgment as if fully set forth herein.

for Summary Adjudication at ¶ 34 (SODF, ¶ 34).[2] She has resided at 630 Emerson Street, NW, Washington, DC 20011 since May 1964. ("Emerson Street Property") *See* SODF, ¶ 34. Plaintiff Richards' sole sources of income consist of her Social Security and retirement benefits. These benefits total $974.00/month. *See* SODF, ¶ 36, Exhibit "F" – SSA 1099. Plaintiff purchased the Emerson Street Property on May 29, 1964 and was the record, fee simple owner of this residential property at all relevant times. *See* SODF, ¶ 34.

During the fall of 2006, i.e., in the midst of the housing boom, Defendant Option One induced Plaintiff to refinance her home under onerous terms and conditions. This refinancing resulted in monthly payments of $1,747.86 which vastly exceeded Plaintiff's monthly income. Plaintiff's inability to repay this unconscionable loan led Option One to foreclose upon the property. *See* SODF, ¶ 35. Defendant Option One, however, did not provide Plaintiff or Countrywide (the lending agency Plaintiff secured a reverse mortgage with) payoff information, despite repeated requests to do so before the foreclosure date. As a result, Plaintiff Richards was not permitted to exercise her statutory rights to stop the improper foreclosure under D.C. law. *See* SODF, ¶¶ 45-47, 52; Exhibit "C" – Telephone Logs of Option One.

Throughout this entire ordeal, Defendant Gross had actual notice of Plaintiff Richards' efforts to satisfy the home mortgage obligation via a reverse mortgage with Countrywide during or at the time of Defendant Option One's improper foreclosure of the Emerson Street Property. *See* Exhibit "A" – Deposition of Alvin Gross, 56: 9-17.

---

[2] The citations are referenced in Plaintiff's Counter-Statement of Facts to Defendant Option One's Summary Judgment Motion.

Defendant Gross knowingly closed on the sale of the Emerson Street Property, despite actual and inquiry notice of this wrongful foreclosure dispute...

## I. PLAINTIFF IS ENTITLED TO RELIEF FROM A WRONGFUL FORECLOSURE

### A. Defendant Gross was not a bona fide purchaser.

The D.C. Court of Appeals has determined that, "[a] bona fide purchaser is one who acquires an interest in property for a valuable consideration and without notice of any outstanding claims which are held against the property...." *Clay Properties, Inc. v. Washington Post Co.*, 604 A.2d 890, 894 (D.C. 1992). Notice may be actual, constructive or inquiry. *Id.* at 895. A purchaser is charged with inquiry notice if there is circumstantial evidence at the time of closing that would have inferred notice upon the purchaser. *Id.* In other words, a purchaser is on inquiry notice when he or she "is aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances." *Id.* at 895; *see also Assoc. Fin. Serv. Of America, Inc. v. District of Columbia*, 689 A.2d 1217, 1222 (D.C. 1997). Defendant Gross was not a bona fide purchaser because he had both actual notice and inquiry notice of the controversy surrounding Option One's wrongful foreclosure of the Emerson Street Property at the time of closing.

Here, Defendant Gross was informed by Ms. Raymond of the improper foreclosure and Plaintiff's attempt to cure the default or payoff the entire balance prior to the foreclosure sale. *See* Exhibit "A" – Deposition of Alvin Gross, 56: 9-17. Defendant Gross admits that the Plaintiffs had made it clear to him that they had a problem with the foreclosure. *Id.* He stated, in relevant part:

> Q (Mr. Andrews): And during that period of time of more than one month it was clear to you that there was family concern that there was a wrongful foreclosure?
> Mr. Sullivan: Objection to form.
> Q: They had a problem with the foreclosure; you knew that?
> A (Mr. Gross): Well, everyone does.
> Q: Well, they were claiming that there was a problem with the foreclosure?
> A: Everyone does. That's very common.
> Q: Fair enough. I just want to know if they had made it clear to you.
> A (Mr. Gross): Yes.

Exhibit "A" – Deposition of Alvin Gross, 56:15-22. However, Defendant Gross ignored this notice and proceeded to close on the property without further inquiry into the validity of Plaintiff's claims, despite sufficient time between September 6th foreclosure "sale" and when Mr. Gross closed the "sale" in October. Mr. Gross stated:

> Q (Mr. Andrews): All right. So the fact that you disregarded the information doesn't mean that it didn't come to your attention; correct?
> Mr. Sullivan: Objection
> A (Mr. Gross): Yes.

Exhibit "A" at 56:21-22 and 57:1-4. In fact, Mr. Gross stated that he knew of the Countrywide reverse mortgage that Plaintiff had secured. Exhibit "A" at 51:13-21; *see also* Exhibit "C" – Commitment Letter from Countrywide. Mr. Gross also stated that he knew that Countrywide was a freestanding, bona fide lending institution, and that he had previously conducted business with Countrywide. Mr. Gross stated:

> Q (Mr. Andrews): How about Countrywide, were you familiar with the name Countrywide before?
> A (Mr. Gross): Yes.
> Q: Now, as of September of 2007 would you agree with me that Countrywide was a freestanding bona fide lending institution?
> A: Yes.
> Q: Had you ever done any loans with Countrywide personally?
> A: Yes.
> * * *
> Q: When you heard from Kenya Raymond that Countrywide might be interested in doing a reverse mortgage that didn't cause you any concerns; correct?
> A: No.

> Q: Now, if she has said it was some fly-by-night bank that you never heard of the hair might have stood up on the back of your neck?
> A: Correct.

Exhibit "A" at 73:12-21 and 74:13-21. Defendant Gross is not a bona fide purchaser because he had knowledge of a possible fault in the foreclosure, as well as Plaintiff's commitment to a reverse mortgage from a bona fide lending source (Countrywide) with whom he had previously done business with. Despite this knowledge, defendant failed to inquire further into the wrongful foreclosure claims.

Furthermore, Defendant Gross and Defendant Option One had an executory contract, under which Defendant Gross had to consummate the deal within 30 days and he had recourse if the deal did not close. *See* Exhibit "B" – Terms of Foreclosure Sale. An executory contract occurs if "neither party has fully performed his or her obligation to the other party." Amjur Contracts § 5; *see also* Williston on Contracts (4th ed.) § 1:19. When a contract is exectuory, the burden is on the party seeking to enforce the contract to affirmatively establish that the contract is valid. *See* Amjur Contracts § 5; *see also* Williston on Contracts (4th ed.) § 1:19. Thus, an executory contract is not absolute; Defendant Gross and Defendant Option One needed to complete performance for a good faith purchase of the home to occur. Interestingly, Defendant Gross failed to close within 30 days of the September 6th foreclosure date, so his claims of an executory contract may ring hollow.

### B. Defendant Option One did not fulfill the statutory foreclosure requirements.

Under District of Columbia law, a foreclosure is wrongful or improper where the property owner sustains damages as a result of a foreclosure executed contrary to established law. *Johnson v. Fairfax Village Condo. IV Unit Owners Ass'n*, 641 A.2d 495,

503, 505 (D.C. 1994) (plaintiff requested damages and, in the alternative, reconveyance of the property and nominal damages for the value of the property sold); *Royall v. Yudelevit*, 268 F.2d 577, 580 (D.C. 1959). The distressed borrower may ask for damages, or in the alternative, may ask to have the wrongful foreclosure set aside and to be restored to the ownership situation prior to the foreclosure. *See Nat'l Life Ins. Co. v. Silverman*, 454 F.2d. 899, 905-06 (D.C. Cir. 1971); *see also UMLIC VP LLC v. T&M Sales and Envtl. Sys., Inc.*, 176 S.W. 3d 595 (Tex. App. 2005) (same). Under *Bank-Fund Fed. Credit Union v. Cuellar* 639 A.2d 561,570 (D.C. Cir. 1994), Defendant Option One violated D.C. Code §42-815.01 which permits a homeowner to payoff the entire mortgage amount to prevent a foreclosure. Defendant Option one prevented Plaintiff Richards from exercising this right by failing to provide payoff information.

The mortgagor is entitled to relief even where the mortgagor defaults on a loan, if the lien holder foreclosed upon the property without fulfilling the statutory foreclosure requirements. *Ballard v. Spruill*, 64 App D.C. 60 (1934); *Cuellar*, 639 A.2d 561, 570. The DC Court of Appeals has required strict adherence to statutory requirements, and has a tendency to construe foreclosure statutes in the homeowner's favor. *See Independence Fed. Sav. Bank v. Huntley*, 573 A.2d 787, 787 (D.C. 1990), *cert. denied*, 984 U.S. 853; *see also Cuellar*, 639 A.2d 561, 570. Thus, Ms. Richards hereby requests that the wrongful foreclosure by Option One be set aside and that she be restored to the fee ownership position she occupied before the wrongful foreclosure sale occurred.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Mary K. Richards, by and through her attorneys, respectfully requests this court set aside the wrongful foreclosure, together with such other relief favoring Plaintiff Richards as this Court deems proper under the circumstances to restore her to her situation prior to the wrongful foreclosure.

Respectfully submitted,

_____/s/_____
Rawle Andrews Jr. (DC #436283)
AARP Legal Counsel for the Elderly
601 E Street, NW, A4-410
Washington, DC 20049
Office: (202) 434-2158
Fax: (202) 434-6464
Email: randrews@aarp.org
Attorney for Plaintiff Mary Richards

# Exhibit "A"

```
 1           UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF COLUMBIA
 3  _____
 4  MARY RICHARDS,                    *
                                      *
 5          Plaintiff                 *
                                      *
 6      V.                            *  Case No. 1:08-cv-0007
                                      *  (PLF)
 7  OPTION ONE MORTGAGE               *
    CORP., et al.,                    *
 8                                    *
            Defendants                *
 9  _____
10
11          Deposition of ALVIN E. GROSS, JR.
12                  Washington, D.C.
13               Monday, November 3, 2008
14                     10:25 a.m.
15
16  Job No.:  190311
17  Pages 1 - 109
18  Reported by:  Jane L. Vaughan
19
20
21                                      COPY
22
```

| | | |
|---|---|---|
| 10:20 | 1 | Q And it wants to talk about you in |
| 10:23 | 2 | communications with the Plaintiff and representatives. |
| 10:26 | 3 | Do you see that? |
| 10:26 | 4 | A Yes. |
| 10:27 | 5 | Q All right. You said you didn't have any |
| 10:28 | 6 | conversations with Mary Richards or Kenya Raymond |
| 10:33 | 7 | prior to foreclosure sale of September 6th; correct? |
| 10:37 | 8 | A Yes. |
| 10:37 | 9 | Q And you have already indicated that you have |
| 10:39 | 10 | never had any communications whatsoever with Mary |
| 10:44 | 11 | Richards; correct? |
| 10:44 | 12 | A Yet. |
| 10:45 | 13 | Q Now, following the foreclosure sale on |
| 10:48 | 14 | September 6, 2007, you write that you communicated on |
| 10:51 | 15 | several occasions with Kenya Raymond by telephone. |
| | 16 | See that? |
| | 17 | A Yes. |
| | 18 | Q Who indicated that she had secured a |
| | 19 | commitment for a reverse mortgage with Countrywide. |
| | 20 | Do you see that? |
| | 21 | A Yes. |
| | 22 | Q Do you know what a reverse mortgage is? |

| | |
|---|---|
| 4:25 | 1 October 14, 2007; correct? |
| 4:27 | 2   A   Correct. |
| 4:27 | 3   Q   And during that period of time of more than |
| 4:30 | 4 one month it was clear to you that there was family |
| 4:36 | 5 concern that there was a wrongful foreclosure? |
| 4:37 | 6       MR. SULLIVAN:  Objection to form. |
| 4:39 | 7       Go ahead and answer. |
| 4:41 | 8 BY MR. ANDREWS: |
| 4:41 | 9   Q   They had a problem with the foreclosure; you |
| 4:44 | 10 knew that? |
| 4:44 | 11  A   Well, everyone does. |
| 4:45 | 12  Q   Well, they were claiming that there was a |
| 4:47 | 13 problem with the foreclosure? |
| 4:49 | 14  A   Everyone does.  That's very common. |
| 4:51 | 15  Q   Fair enough.  I just want to know if they had |
| 4:54 | 16 made it clear to you. |
| 4:55 | 17  A   Yes. |
| 4:55 | 18  Q   So nobody wasn't telling you what you needed |
| 4:58 | 19 to hear; correct? |
| 4:59 | 20  A   I mean that's what I always hear. |
| 5:01 | 21  Q   All right.  So the fact that you disregarded |
| 5:03 | 22 the information doesn't mean that it didn't come to |

1 your attention; correct?

2          MR. SULLIVAN:  Objection.

3          THE WITNESS:  Yes.

4          MR. ANDREWS:  All right.

5 BY MR. ANDREWS:

6     Q    Who is Martin Vankirk?

7     A    He is a real estate appraiser.

8     Q    And how well do you know Mr. Vankirk?

9     A    I know him fairly well.

10    Q    Is he a licensed certified appraiser?

11    A    Yes.

12    Q    Do you ever talk about property valuations
13 with Mr. Vankirk before his appraisals are prepared?

14    A    No.

15    Q    How long have you known Mr. Martin Vankirk?

16    A    Maybe three years.

17    Q    And of the 10 to 15 properties that you hold
18 title to in your name in the District on how many of
19 those properties has Mr. Vankirk provided valuation
20 for you?

21    A    Maybe 30 percent of those.

22    Q    So three to five properties?

| | | |
|---|---|---|
| 9:16 | 1 Q | Have you ever retained the service of |
| 9:25 | 2 | Friedman & McFayden? |
| 9:27 | 3 A | No. |
| 9:27 | 4 Q | Now, you weren't familiar with Option One |
| 9:45 | 5 | before the lawsuit; correct? |
| 9:46 | 6 A | Correct. |
| :47 | 7 Q | And your recollection is you have never had |
| | 8 | any interactions with anybody who identified |
| | 9 | themselves at Option One before your involvement in |
| | 10 | this case? |
| | 11 A | Correct. |
| | 12 Q | How about Countrywide, were you familiar with |
| | 13 | the name Countrywide before? |
| | 14 A | Yes. |
| | 15 Q | Now, as of September of 2007 would you agree |
| | 16 | with me that Countrywide was a freestanding bona fide |
| | 17 | lending institution? |
| | 18 A | Yes. |
| | 19 Q | Had you ever done any loans with Countrywide |
| | 20 | personally? |
| | A | Yes. |
| | Q | On how many occasions? |

```
11:28   1    A    Quite a few.

11:29   2    Q    Any transactions in the District?

11:30   3    A    Yes.

11:32   4    Q    Were you on any restrictions in terms of

11:40   5   Countrywide at the time that you went and got

11:45   6   financing from Charter House on 630 Emerson Street?

11:49   7    A    Any sort of restrictions?

11:50   8    Q    Yes.

11:50   9    A    Not that I am aware of.

       10    Q    Nobody told you from Countrywide we can't

       11   lend any more money to you or anything of that effect?

       12    A    No.

       13    Q    All right.  When you heard from Kenya Raymond

       14   that Countrywide might be interested in doing a

       15   reverse mortgage that didn't cause you any concerns;

       16   correct?

       17    A    No.

       18    Q    Now, if she has said it was some fly-by-night

       19   bank that you never heard of the hair might have stood

       20   up on the back of your neck?

       21    A    Correct.

       22    Q    All right.  What are your plans for 630
```

# Exhibit "B"

ALEX COOPER AUCTS., INC.
5301 WISCONSIN AVE. NW, # 750
WASH., DC  202-364-0306
WWW.ALEXCOOPER.COM

SUBSTITUTE TRUSTEES' SALE OF Real Property located at 630 Emerson St., NW, Washington, DC 20011 under deed of trust recorded on Dec. 26, 2006 Instrument #2006174455 in the Land Records, DC, and in accordance with Public Law 90-566 filed on Aug. 3, 2007 and at the request of the party secured thereby, the undersigned Sub. Trustees will offer for sale by public auction within the offices of Alex Cooper Aucts., Inc., 5301 Wisconsin Ave., N.W., #750, Wash., D.C., 202-364-0306, on September 6, 2007 at 10:40 AM the following described land and premises situate in the District of Columbia, and designated as and being Lot 98, Square 3214.

TERMS OF SALE:  A deposit of $24,000 in the form of cash, certified check, or in any other form suitable to the Sub. Trustees in their sole discretion, shall be required at the time of sale, except no deposit shall be required of the secured party, its successors or assigns. All other terms of sale to be announced at sale. Settlement within 30 days, otherwise Sub. Trustees reserve the right to forfeit deposit, readvertise and sell the property at the risk of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Should the Trustees be unable to convey good and marketable title, the Sub. Trustees and purchaser(s) agree that the purchaser(s)' sole remedy in law or equity shall be limited to the refund of the deposit. Upon refund of the deposit, the sale shall be void and of no effect.

Howard N. Bierman, Jacob Geesing, Carrie M. Ward, Sub. Trustees

---

WASHINGTON TIMES - SINGLE COLUMN - SET SOLID – Aug. 27, 29, 31, Sep. 3 & 5
(bin0906)8/2/07 4:32 PM

**EXHIBIT 5**

# Exhibit "C"

 **Countrywide Bank®**

July 27, 2007

Countrywide Bank, FSB
Reverse Mortgage Processing Center
MS TPSA-281
1330 West Southern Avenue
Tempe, AZ 85282-4545
Fax: (866) 327-9877

Mary K Richards
630 Emerson Street NW
Washington, DC 20011

RE: Loan # 151438190

Dear Borrowers:

Congratulations! Your application for a reverse mortgage has been approved with the following terms:

| | |
|---|---|
| Product: | Standard HECM Monthly |
| Appraised Value: | $375,000.00 |
| Loan Amount: | $280,073.88 |
| | The loan amount is based on interest rates. It is possible that the movement of interest rates could cause your loan amount to be higher or lower at the time of loan closing. |
| Interest Rate: | To be determined at closing by adding a margin of 1.00% to the index value in effect at that time. The interest rate will adjust monthly. |
| Payment Plan: | Line of Credit |

The Loan Amount above is the Gross Benefit for which you are eligible and the loan amount for which you have been approved. At closing there will be a number of deductions from that amount that will reduce your actual cash proceeds or available proceeds going forward. These deductions will include: (1) origination fee (up to 2% of your home value); (2) mortgage insurance premium or mortgagee insurance fee (up to 2% of your home value); (3) a servicing fee set-aside; (4) a set-aside for repairs, if applicable; (5) other closing costs (see your Good Faith Estimate for estimates of various closing costs); (6) payments for property taxes and/or property insurance premiums, if applicable. In addition, the amounts to pay off any existing liens against your property or other amounts that you direct us to pay will also be deducted from the available proceeds. Be sure you discuss these deductions with your loan specialist so you understand their impact on your available proceeds.

The Payment Plan indicated above is as you have selected at this time. You may change your selected Payment Plan option at any time.

This approval expires on September 25, 2007 and your Loan Amount is subject to change after that date.

Page 1 of 3

*23991*

*151438190000001R079*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing "*PLAINTIFF RICHARDS' SUPPLEMENTAL MEMORANDUM RE: BFP AND WRONGFUL FORECLOSURE*" was served electronically on this the 11th day of August 2009, to all counsel of record as follows:

Patrick R. Buckler (MD 25943)
*Admitted Pro Hac Vice*
Spence & Buckler, PC
100 West Pennsylvania, Suite 301
Towson, Maryland 21202
Office: 410-823-5003
Fax: 443-927-8905
Email: pat@spencebucklerlaw.com
*Attorneys for Defendant Option One Mortgage Corp.*

G. Vann Canada, Jr. (DC 366414)
Miles & Stockbridge, PC
11 North Washington Street, Suite 700
Rockville, Maryland 20850
Office: 301-762-1600
Fax: 301-762-0363
Email: vcanada@milestockbridge.com
*Attorneys for Defendant Alvin E. Gross, Jr.*

/s/
Rawle Andrews Jr.
*Attorney for Plaintiff Mary Richards*