UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARY RICHARDS,                      )
                                    )
       Plaintiff,                  )
                                    )
       v.                          )   Civil Action No. 08-0007 (PLF)
                                    )
OPTION ONE MORTGAGE CORP., *et al.*,)
                                    )
       Defendants.                 )
_____ )

OPINION

       This action arose from an allegedly wrongful foreclosure by defendant Option One Mortgage Corporation ("Option One") on plaintiff Mary Richards's home and defendant Alvin Gross's subsequent purchase of the property at a foreclosure sale. This matter is before the Court on separate motions for summary judgment filed by Option One and by Mr. Gross.

       After hearing oral argument on defendant Gross's motion for judgment on the pleadings or, in the alternative, for summary judgment, the Court granted Gross's motion on all counts of plaintiff's complaint against Mr. Gross except Count One — plaintiff's claim for a declaratory judgment to set aside the transfer of title. See Order at 1, Dkt. No. 37 (July 23, 2009). It requested additional briefing on "the issues relating to available remedies for wrongful foreclosure and on when one becomes a bona fide purchaser for value" to assist in the resolution of defendant Gross's motion as to Count One. See id. On August 25, 2009, the Court heard oral argument on Gross's motion for summary judgment on the remaining count against him as well as on Option One's motion for summary judgment on all counts against it. The parties thereafter

engaged in limited additional discovery with the Court's permission. See Richards v. Option One, Civil Action No. 08-0007, 2009 U.S. Dist. LEXIS 77958 at *6 (D.D.C. Aug. 28, 2009). After careful consideration of the parties' papers and attached exhibits, the relevant case law and statutes, and the oral arguments presented by counsel, the Court now grants both motions for summary judgment.[1]

## I.  BACKGROUND

Plaintiff Mary Richards was the fee simple owner of her home, located at 630 Emerson Street, Northwest, Washington, District of Columbia (the "property" or "the Emerson Street Address"). See Opt. One Mot., Statement of Undisputed Material Facts ("Opt. One Facts") ¶ 1; Opp. to Opt. One, Plaintiff's Counter-Statement of Disputed Material Facts ("Pl. Facts") ¶ 1. She is a homebound senior citizen. See Pl. Facts ¶ 7. At some point prior to October 11, 2006, Richards and Kenya Raymond, Ms. Richards's granddaughter and "attorney in fact," began discussions with Daniel Botts, a mortgage broker for Premier Mortgage Capital, about refinancing Richards's property. See Mot, Ex. A, Deposition of Daniel R. Botts, Jr.

---

[1]  The Court had before it the following papers: the Complaint ("Compl."); Option One Mortgage Corporation's Motion for Summary Judgment ("Opt. One Mot."); Plaintiff Richards's Memorandum in Opposition to Defendant Option One's Motion for Summary Judgment ("Opp. to Opt. One"); Option One Mortgage Corporation's Reply Memorandum in Support of its Motion for Summary Judgment ("Opt. One Rep."); Defendant Alvin E. Gross, Jr.'s Motion to Dismiss or in the Alternative, Motion for Summary Judgment; Plaintiff Richards's Memorandum in Opposition to Defendant Gross's Motion to Dismiss, or Alternatively, Summary Judgment; Defendant Alvin E. Gross, Jr.'s Reply to Plaintiff's Opposition to Motion to Dismiss or, In the Alternative Motion for Summary Judgment; Defendants' Joint Supplemental Memorandum in Support of their Motions for Summary Judgment as to Count 1 of Plaintiff's Complaint ("Joint Supp."); Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl. Supp."); and Defendants' Joint Response to Plaintiff's Supplemental Memorandum.

("Botts Dep.") at 28; Opt. One Facts ¶¶ 2, 3; Pl. Facts ¶ 3.[2]  Thereafter, Botts visited the property and met with plaintiff, Mary Richards, Kenya Raymond, and Denise Richards, plaintiff's daughter and Raymond's mother, to discuss a loan on the property and to have plaintiff review and sign various loan documents.  See Opt. One Facts ¶ 4; Pl. Facts ¶ 4.  Botts testified that he spoke with plaintiff and that she appeared to understand what he was saying.  See Botts Dep. at 43.

On October 11, 2006, plaintiff submitted a Uniform Residential Loan Application to Premier Mortgage Capital, see Opt. One Mot., Ex. B, and a Credit Authorization to Premier Mortgage Capital.  See Opt. One Mot., Ex. C; Botts Dep. at 53.  The loan was shopped out to a number of lenders, including Option One.  See Opt. One Facts ¶ 5; Botts Dep. at 47.  On October 26, 2006, Botts returned to the property and presented numerous loan disclosure documents to Richards for her review and/or signature.  See Opt. One Facts ¶ 7; Botts Dep. at 51-63.[3]  After the loan closed with Option One, Botts met with Richards and Raymond at the property; he confirmed that they were satisfied with the loan and learned that the proceeds from the cashout payment — approximately $38,000 — had been received.  See Opt. One Facts ¶ 9, Botts Dep. at 74-75.  The monthly loan payments required were $1,747.86, even though plaintiff's monthly

---

[2] Although plaintiff denies this fact, see Pl. Facts ¶ 2, the only basis for her denial is that Mr. Botts's name does not appear on Option One's loan approval statement as the broker. See Opp. to Opt. One, Ex. N.  Whether Mr. Botts was the named broker is irrelevant.  Plaintiff acknowledges that Mr. Botts did discuss the loan with her.  See Pl. Facts ¶ 4.  Mr. Botts is related to plaintiff.  See Opt. One Facts ¶ 2; Botts Dep. at 10.

[3] Plaintiff denies this assertion of fact, but she but does not have any evidence, such as a sworn statement from her or from Raymond, stating that the documents were not received. See Pl. Facts ¶ 7.

income was only approximately $974.  See Pl. Facts ¶ 32.[4]

Plaintiff defaulted on the mortgage and Option One employed Bierman, Geesing & Ward, LLC ("BG & W") to take legal action.  See Opt. One Facts ¶ 12.  On July 30, 2007, BG & W sent a letter by first-class mail to Ms. Richards at the Emerson Street address advising that a foreclosure sale might be scheduled.  See Opt. One Mot., Ex. G, Affidavit of Jacob Geesing ("Geesing Aff.") ¶ 4.[5]  BG & W also sent a document entitled "Important Notice Regarding Alternatives to Foreclosure" to the Emerson Street address by first class mail and certified mail on July 30, 2007.  See id. ¶ 6.  Neither of these was returned as not having been delivered.  See id. ¶¶ 5, 7.  On August 3, 2007, the auctioneer sent a Notice of Foreclosure Sale to Richards and to "Occupant" at the Emerson Street address by first class regular mail and certified return receipt requested mail.  See Opt. One Mot., Ex. H, Affidavit of Jody Krieger ¶ 5.  The return receipt cards were returned to the auctioneer by the United States Postal Service showing that the Notice of Foreclosure Sale had been received and signed for by Kenya D. Raymond.  See id. ¶ 7.  On August 17, 2007, BG & W sent letters by first class mail and certified mail to Ms. Richards and to "Occupant" at the Emerson Street address advising that a foreclosure sale had been scheduled for September 6, 2007.  See Geesing Aff. ¶ 9.  The August 17, 2007 certified letters were signed for by "Timothy Richards" and none of the letters sent by regular

---

[4] Plaintiff originally alleged that an individual from Option One demanded $30,000 in repayments and that the money went missing.  See Compl. ¶¶ 20-21.  After discovery, it has become clear that there is no basis for these allegations and plaintiff does not pursue them.  See Opt. One Mot., Memorandum of Points and Authorities in Support at 13-14.

[5] Although plaintiff denies the facts relating to the notice provided by BG & W, she does not provide any evidence in support of her denial other than BG & W's allegedly bad reputation.  See Pl. Facts ¶¶ 13, 14, 17.

mail were returned to BG & W.  See id. ¶¶ 5, 7, 11.  The notice of foreclosure sale was recorded among the Land Records of the Recorder of Deeds of the District of Columbia on August 3, 2007 and also was advertised in the Washington Times on August 27, 29, 31 and September 1 and 5, 2007.  See Opt. One Facts. ¶ 19.

During the summer of 2007, plaintiff attempted to obtain a reverse mortgage from Countrywide Bank, FSB ("Countrywide").  See Pl. Facts ¶ 36; Praecipe, Dkt. No. 55, Deposition of Douglas Helvig ("Helvig Dep.") at 20, 22-25.  She received a loan commitment letter from Countrywide for an amount that would have paid off the balance of the loan from Option One.  See Pl. Facts ¶¶ 36-38; see also Opp. to Opt. One, Ex. A, Letter from Countrywide to Ms. Richards dated July 27, 2007 ("Loan Commitment Letter").  Although plaintiff originally made representations to the contrary, it is now clear that she and Countrywide never closed on this loan.  Countrywide's records for the loan classify the loan as "cancelled."  See Joint Supp., Ex. 1 at 8, Comments re loan to Mary Richards ("Countrywide Loan Comments").  The final entry in Countrywide's records for the loan states: "Cancellation: Due to borrower's numbers disconnected, could not contact borrower to set up closing to avoid foreclosure.  Borrowers eventually called us day of foreclosure, but home sold in morning.  In Wash DC, not redemption eligible."  Id.; see also Opt. One Rep., Ex. E, Deposition of Kendra Raymond ("Raymond Dep.") at 350-51 (agreeing that she had no knowledge that Ms. Richards ever closed on the reverse mortgage loan).  Although plaintiff previously alleged that with the assistance of Francisco Enriquez, a Countrywide loan agent, she attempted to pay off the debt to Option One on the day of the foreclosure sale, see Compl. ¶¶ 28-31, the records from Countrywide show that any attempt by her to do so was too late and certainly would not have been successful.  She never

5

closed on the reverse mortgage and therefore she did not have the funds necessary to pay off the original mortgage.[6]  On September 6, 2007, the foreclosure sale occurred and the property was purchased by Mr. Gross.  See Opt. One Facts ¶ 24.

## II.  STANDARD OF REVIEW

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott

---

[6]  On August 28, 2009, the Court issued a Memorandum Opinion and Order declining to grant summary judgment for either defendant and noting that Kendra Raymond's affidavit suggested that "she was ready, willing, and able to tender the full amount of the mortgage loan balance and that Option One refused to accept this tender prior to foreclosure" and that Raymond had testified at her deposition that she had spoken with both Francisco Enriquez and Gross immediately after the foreclosure sale.  See Richards v. Option One Mortgage Corp., 2009 U.S. Dist. LEXIS 77958 at *4.  The Court suggested that deposition testimony from Mr. Enriquez would be helpful for resolution of the issue.  See id. at *6.  The parties were unable to locate Mr. Enriquez for further discovery, but, with the permission of the Court, took a deposition of Douglas Helvig a corporate representative of Bank of America (because Bank of America had purchased Countrywide during the period since the events relevant to this case took place).  See Order, Dkt. No. 51 (Oct. 10, 2009).  The Court is now in receipt of the fruits of the parties' additional limited discovery.

v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). She is required to provide evidence that would permit a reasonable jury to find in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

7

III. DISCUSSION

Plaintiff makes three claims against Option One: Count One is for a declaratory judgment to set aside deeds and to quiet title to the property; Count Two is for violations of the District of Columbia Right to Cure Residential Mortgage Foreclosure Default Act; and Count Three is for breach of contract against Option One for violations of its duties of good faith and fair dealing with Richards in its loan administration and collection activities — including a duty to deal honestly with her concerning the nature and extent of her obligations under the mortgage.[7] Because Count One — which is also the only count remaining against defendant Gross — incorporates many of the substantive arguments made in Counts Two and Three, the Court will address Count One last.

*A. Count Two*

Count Two alleges violations of the District of Columbia Right to Cure Residential Mortgage Default Act, D.C. Code § 42-815.01.[8] The Act provides that after a notice of intent to foreclose a residential mortgage is given, "at any time up to 5 business days prior to the commencement of bidding at a trustee sale . . . the residential mortgage debtor or anyone in his behalf . . . may cure his default and prevent sale or other disposition of the real estate" by tendering the amount required to bring the account current and certain additional fees and expenses. D.C. Code § 42-815.01(b) and (c). Plaintiff asserts that she secured a commitment to

---

[7] Plaintiff raised additional claims in her complaint, but she and Option One report that they were able to resolve those claims. See Third Status Report, Dkt. No. 33 (D.D.C. Apr. 27, 2009) ¶ 1. These counts therefore will be dismissed as to Option One.

[8] Plaintiff also incorporates these allegations into her breach of contract claim (Count Three) as an alleged violation of the covenant of good faith and fair dealing.

a reverse mortgage from Countrywide Bank on July 27, 2009, well in advance of the foreclosure sale, and that this loan would have been more than sufficient to pay off the balance of the loan from Option One. See Pl. Facts ¶¶ 37-38. She argues that Option One violated Section 815.01 because it refused to provide her with accurate payoff information, thus making it impossible for Countrywide to close timely on the reverse mortgage and therefore impossible for her to cure her default to Option One. See Opp. to Opt. One at 13. She also argues that a Countrywide loan officer, Francisco Enriquez, attempted to wire transfer the payoff amount to Option One on the day of the foreclosure sale, but that Option One refused to accept payment up until the time the sale was finalized. See Opp. to Opt. One at 4-5.

With regard to plaintiff's argument that Option One's failure to provide her or Countrywide with the payoff amount necessary to cure her default made it impossible for her to stop the foreclosure sale, the evidence before the Court shows that these factual assertions are without foundation. Option One now has produced evidence that *it sent a payoff statement* to the designated settlement agent for Countrywide on August 21, 2007. See Joint Supp., Ex. 1 at 14-15, Fax from Option One to Lenders First Choice dated August 21, 2007 (identifying payoff amount). And Countrywide's records show that it received the updated payoff information and verified the payoff amount on August 28, 2007. See Helvig Dep. at 84-87 (discussing document in Countrywide's possession which identified payoff amount); Countrywide Loan Comments at 9

(entry on August 28, 2007 states "received updated payoff").[9] No additional payoff information would have been required for Countrywide to close on the reverse mortgage loan.[10]

As for plaintiff's argument that Countrywide attempted to tender payment to Option One on the day of the foreclosure sale, but that the payment was refused by Option One, these allegations are also contradicted by the undisputed evidence. Plaintiff has produced evidence that Countrywide provided her with a "Commitment Letter" for the reverse mortgage loan, see Loan Commitment Letter, but the evidence is clear that Countrywide and plaintiff never closed on the loan. See Countrywide Loan Comments at 8; see also Raymond Dep. at 350-51 (agreeing that she had no knowledge that Ms. Richards ever closed on the reverse mortgage loan). Indeed, Countrywide's records show that the loan commitment was cancelled because Richards's phone number was disconnected and Countrywide "could not contact borrower to set up [the] closing to avoid foreclosure." See Countrywide Loan Comments at 8.[11] Without having closed on the loan, Ms. Richards would not have had money available to tender to Option One in order to cure the default. Despite her assertions to the contrary, the evidence is undisputed that

---

[9] A Bank of America corporate representative, Douglas Helvig, testified at the deposition because Bank of America has acquired Countrywide since these events occurred. See Joint Supp. at 2 n.1.

[10] While plaintiff assumes that if the lender does not provide a payoff amount upon request, it has breached Section 815.01 of Title 42 of the District of Columbia Code, she does not provide legal support for this argument, and such a conclusion is not evident from the text of the statute or the relevant case law. The Court need not resolve this question, however, because it has found that the undisputed facts show that Option One did provide the requested payoff amount.

[11] Plaintiff argues that her phone was not actually disconnected, see Pl. Supp. at 5, but whether or not her assertion is true, the fact relevant to this case is that Countrywide never closed on the reverse mortgage loan.

plaintiff could not have attempted to make a payment to cure the default on her mortgage on the day of the foreclosure sale because she never received the loan proceeds that would have enabled her to do so. Accordingly, her argument that Option One refused to accept this alleged payment is unsupported by any evidence and is without merit.

### B. Count Three

As to Count Three, breach of contract, plaintiff incorporates a host of theories, all of which are premised on violations of the implied covenant of good faith and fair dealing.[12] Although her complaint originally focused on Option One's alleged inducement of her to take the loan, plaintiff has not pursued this theory following discovery. Instead, plaintiff now argues that the mortgage should never have been approved because its monthly payment amounts exceeded her ability to repay the loan, that Option One failed to provide adequate notice of certain loan terms, and, as discussed *supra* at 9-11, that Option One wrongfully foreclosed by not providing payoff amounts to plaintiff and by not accepting her alleged tender of payment on the day of foreclosure.

Plaintiff argues that Option One violated its implied covenant of good faith and fair dealing with her by providing a loan whose monthly payments exceeded her ability to repay. Plaintiff incorporates into her argument the District of Columbia Code prohibition on lenders "mak[ing] a covered loan if the borrower, at the time that the covered loan is closed, cannot

---

[12] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." See Restatement (Second) of Contracts § 205; see also Minebea Co. v. Papst, 444 F. Supp. 2d 68, 188 (D.D.C. 2006) ("The scope of the implied covenant of good faith and fair dealing is defined in part by the justified expectations of the contracting parties. A party may breach the covenant by violating an implied term of the contract.").

reasonably be expected to make the scheduled payments." D.C. Code § 26-1152.02(a). See Opp. to Opt. One at 8-9. Certainly it is undisputed that the monthly loan payments required of her were greater than plaintiff's monthly income. Option One points out, however, that had plaintiff intended to assert a violation of Section 26-1152.02, she should have amended her complaint to do so. See Opt One Opt. One Rep. at 2. Option One's argument is well taken. The Court nevertheless will assume for the moment that the implied covenant of good faith and fair dealing requires commercial lenders to adhere to commercial lending laws and that a failure to adhere to such laws would breach that duty. Even making this assumption, plaintiff cannot defeat summary judgment on this theory.

First, as Option One correctly points out, there is no evidence that plaintiff's mortgage was a "covered loan" within the meaning of Section 26-1152.02. See Opt. One Rep. at 2-3. To have been "covered," the annual percentage rate on the loan had to exceed by more than six percentage points the yield on United States Treasury securities having comparable rates of maturity. See D.C. Code § 26-1151.01(7)(A). Plaintiff has not alleged that her loan was a "covered loan," nor has she introduced any evidence to establish that she meets this or any of the other criteria of such a loan under the statute. Plaintiff therefore cannot defeat summary judgment for Option One on this ground.

Second, with regard to plaintiff's more general argument that Option One violated the implied covenant of good faith and fair dealing by providing her with the loan in question despite her age, low income and history of credit delinquencies, see Opp. to Opt. One at 8, defendant has submitted evidence showing that plaintiff in fact qualified for the loan. Option One approved her for an "Alt-A" loan. See Opt. One Rep. at 4. To qualify for such a loan she

was not required to provide any proof of income, employment or assets, although she was required to certify that she was not relying on fixed income to repay the loan, which she did. See Opt. One Mot., Affidavit of Dale M. Sugimoto ("Sugimoto Aff."), Ex. 1 at 3 (Borrower's Certification for No Income Documentation Loan Program). The only requirement was that plaintiff's credit score be at least 660, see id., which it was according to each of the three major credit reporting agencies. See Opp. to Opt. One, Ex. H at 2 (Credit Score Report). Although plaintiff points out that all of these credit reports identify "serious delinquencies," the corporate representative for Option One, Dale Sugimoto, testified that so long as plaintiff's credit score was adequate, the report of delinquencies would not disqualify her for the loan. See Opt. One Rep., Ex. A, Deposition of Dale M. Sugimoto at 140-41. Because plaintiff qualified for the loan for which she applied — or, in other words, received the contract she bargained for — the Court concludes that defendant did not breach the implied covenant of good faith and fair dealing with plaintiff by extending the loan to her. See Minebea v. Pabst, 444 F. Supp. 2d 68 at 188 ("no obligation can be implied that would be inconsistent with . . . express terms of the contractual relationship") (quotation omitted).

Third, plaintiff alleges that Option One violated the implied covenant of good faith and fair dealing by failing to provide her with notice about the terms of the loan and the required monthly payments. Option One has submitted evidence that it gave plaintiff numerous documents providing notice about the terms of the loan, including the amount of her monthly payment. See Opt. One Facts ¶¶ 7-8; see also Botts Dep. at 51-63; Sugimoto Aff. ¶ 5. Apparently now recognizing that Option One complied with many of its disclosure obligations, in her opposition to summary judgment plaintiff focuses exclusively on Option One's alleged

failure to disclose the yield spread premium (money paid to the mortgage broker).  See Opp. to Opt. One at 14.  Plaintiff bases her argument on Botts's statement that he is uncertain whether he told plaintiff about the yield spread premium.  See Botts Dep. at 73.  Mr. Sugimoto has provided a sworn statement, however, that a written notice of the yield spread premium entitled "Broker Compensation (YSP) and the Fees in Your Transaction" is in Option One's loan file for Ms. Richards and therefore presumably was provided to her.  See Sugimoto Aff. ¶ 5.  In fact, this document has Ms. Richards's signature on it, dated November 10, 2006.  See Sugimoto Aff., Ex. 1 at 4.  Plaintiff provides no evidence to challenge the validity of this document.  Absent evidence to the contrary, the Court concludes that Option One did provide plaintiff with adequate notice of the yield spread premium.

Finally, plaintiff argues that Option One breached its contract with her by wrongfully preventing her from paying off the balance of the mortgage.  As discussed with regard to Count Two, *supra* at 10-11, the undisputed facts show that this allegation is unsupported by the evidence.  The Court will grant Option One's motion for summary judgment on Count Three, the breach of contract claim.

### C.  Count One

Plaintiff alleges that the foreclosure was wrongful because the loan violated various local and federal lending laws because Option One failed to provide certain notices to her.  She seeks a declaratory judgment to restore title to the property to her on these grounds.[13]

---

[13]    A wrongful foreclosure may be remedied either with damages or by setting the foreclosure aside.  See National Life Ins. Co. v. Silverman, 454 F.2d 899, 905-06 (D.C. Cir. 1971) (*en banc*) ("For a wrongful foreclosure the borrower has alternative and inconsistent remedies. He may let the wrongful foreclosure stand and ask for damages . . . .  Or, he may ask to

As discussed *supra* at 13-14, however, the only specific notice that plaintiff now alleges that she did not receive is the yield spread premium, and the Court concludes that the undisputed material facts show that she did in fact receive this notice. Plaintiff also argues that the loan was unlawful because it exceeded her ability to make its monthly payments. As discussed *supra* at 11-12, with regard to Count Three, plaintiff cannot succeed on this point. Finally, plaintiff asserts that Option One wrongfully did not allow her to cure her default and that title should be restored on this basis. As discussed *supra* at 10-11, with respect to Count Two, plaintiff cannot succeed on this point either.

In addition to these arguments, plaintiff asserts that she did not receive the notice of the foreclosure sale that is required by statute. See Compl. ¶ 50. As shown by defendant's statement of facts and its corresponding exhibits, however, it is clear that plaintiff received extensive notice of the foreclosure and the subsequent sale. See Opt. One Facts ¶¶ 13-23. She now has essentially conceded this point and does not pursue it in her opposition, other than to state that Richards cannot recall receiving notice. See Pl. Facts ¶¶ 13-14, 18. Under District of Columbia law, however, "actual notice of a foreclosure sale is not required if the statutory requirements are adhered to." Young v. First Am. Fin. Servs., 992 F. Supp. 440, 445 (D.D.C. 1998). The statute was satisfied by sending the notice of foreclosure sale to plaintiffs' last known address by certified mail, return receipt requested, and by delivering a copy of the notice to the Mayor (or his designated agent) at least thirty days prior to the scheduled sale, both of which defendant did. See 42 D.C. Code § 42-815(b); Opt. One Facts ¶¶ 17, 19. The Court will

---

have the wrongful foreclosure set aside.") (citing Royall v. Yudelevit, 268 F.2d 577, 580 (D.C. Cir. 1959)). If plaintiff could show that the foreclosure was wrongful, she might be successful on Count One.

grant defendant Option One's motion for summary judgment on Count One.

Because the Court concludes that the foreclosure was not wrongful, the question of whether defendant Gross had notice of the alleged wrongfulness of the foreclosure — which is the only remaining allegation against him — is moot. The Court will grant summary judgment for defendant Gross on Count One as well.

An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
DATE:  February 4, 2010                                       United States District Judge